[Crim. No. 341. Department One.—February 24, 1898.]

## THE PEOPLE, Respondent, v. GREENVILLE LAMBERT, Appellant.

CRIMINAL LAW—RAPE—EVIDENCE—COMPLAINT OF PROSECUTRIX—CORROBORA-TION—RES GESTÆ—HEARSAY.—Upon the trial of a defendant accused of the crime of rape, the fact of early complaint by the prosecutrix is independent and original evidence, admissible in corroboration of her testimony; but the complaint itself forms no part of the *res gestae*, and its contents are objectionable hearsay; and to permit the prosecutrix or any other witness to testify to the contents of the complaint, against the objection of the defendant, is highly prejudicial error.

ID.—LONG DELAYED COMPLAINT INADMISSIBLE—INSTRUCTION.—To take the fact of complaint of the prosecutrix out of the category of inadmissible evidence, the complaint must be made at the earliest practicable moment after the alleged offense, or the delay must be satisfac-

torily excused or justified; and evidence of a complaint long delayed, where the delay in making it is not satisfactorily explained, is inadmissible; and an instruction based upon such inadmissible evidence is erroneous.

Id.—Impeachment—Deposition Taken at Preliminary Examination—Explanation.—Where the attention of a witness is called upon the cross-examination to his deposition taken before the justice of the peace at the preliminary examination for purposes of impeachment, he has a right, upon redirect examination, to explain his former testimony; and it is reversible error to refuse to permit him to do so, on the alleged ground that the deposition is a record which cannot be explained or varied.

Id.—Improper Reading of Deposition—Contradictory Parts Only Admissible.—It is improper to read the whole of the former deposition of the witness for purposes of impeachment under pretense that some portions of it are contradictory of his testimony at the trial; but the proper course is to read only those portions that are contradictory, and, being in writing, they must be shown to the witness before any question is asked concerning them, unless he asks to have them read to him instead of being shown to him.

Id.—Impeachment of Prosecutrix—Announced Theory of Defense—Made-up Story—Admissible Evidence.—Where the announced theory of the defense was that the charge of rape committed by the defendant upon his daughter, the prosecutrix, was a made-up story by the prosecutrix for the purpose of getting away from her father's control, a question asked her upon cross-examination whether she did not, at a time and place specified, in a conversation with a brother named, tell him that she and another brother and her married sister, each named, were putting up jobs on her father to get him into San Quentin, so she could go and live with her sister, sufficiently lays the foundation for impeachment, and is admissible for that purpose.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial.   J. M. Mannon, Judge.

The facts are stated in the opinion.

Johnston & Thatcher, for Appellant.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy Attorney General, for Respondent.

CHIPMAN, C.—Information for the crime of rape, alleged to have been committed by defendant upon the person of his daughter, Mary Lambert, about November 15, 1896; she was then seventeen years old.   Defendant was convicted and sen-

tenced to life imprisonment. The appeal is from the judgment and order denying a new trial. Appellant specifies numerous errors of the court in admitting and excluding evidence and in giving instructions, and that the evidence was insufficient to justify the verdict. The evidence relating to the circumstances connected with the alleged act is confined to that of the prosecutrix and certain declarations she made some time afterward.

1. Mrs. Emma Scott, sister of the prosecutrix, testified for the prosecution that she had met the prosecutrix twice in December, but that it was not until about January 24, 1897, that she told her anything about her father's conduct, although they lived only three-quarters of a mile apart. The witness was permitted to testify, against defendant's objection, as to what the prosecutrix told her the defendant did to his daughter. The testimony embraces much more than a complaint and was sufficient to constitute evidence of the crime alleged. The prosecutrix when on the stand did not speak of having made complaint to this witness, nor to any other person, nor was she asked to do so. In *People v. Mayes*, 66 Cal. 597, 56 Am. Rep. 126, in a similar case, the prosecutrix was allowed to state certain complaints made by her to her sister shortly after the transaction complained of. The statements were admitted by the trial court as a part of the *res gestae*. It was said here on appeal, quoting from Mr. Greenleaf, "that this complaint forms no part of the *res gestae;* it is only a fact corroborative of the testimony of the complainant. The true rule is to admit evidence of the fact of complaint in all cases, and in no case to admit anything more. The evidence when restricted to this extent is not hearsay, but in the strictest sense original evidence. When, however, these limits are exceeded, it becomes hearsay in a very objectionable form. There is every reason, therefore, why it should be admitted to the extent indicated, and none why it should be admitted further." (3 Greenleaf on Evidence, sec. 213.) *People v. Mayes, supra,* upon this point was affirmed in *People v. Tierney,* 67 Cal. 54, and *People v. Stewart,* 97 Cal. 240. It is perfectly obvious that if the prosecutrix herself cannot be permitted to testify as to what she told her sister, her sister certainly cannot be permitted to repeat the details, for the evidence would thus become doubly hearsay; and being

filtered through the understanding of another person would be additionally dangerous. Mr. Russell says: "The usual course in cases of rape is to ask the prosecutrix whether she made any complaint, and, if so, to whom; and, if she mentions a person to whom she made complaint, to call such person to prove the fact. But it has been the invariable practice not to permit either the prosecutrix or the person so called to state the particulars of the complaint in chief." (1 Russell on Crimes. See other authorities cited in *People v. Mayes, supra.*) Neither upon authority nor upon reason can we sustain the ruling of the court, which was to allow this sort of hearsay evidence to prove the offense committed. Another witness for the prosecution, Alice Foster, was allowed to give similar testimony against defendant's objection. This evidence was highly prejudicial to defendant, and it was error to admit it. The evidence was, we think, inadmissible for another reason urged by defendant, to wit: That the complaint was made too long after the act, and the delay in making it was not satisfactorily explained. It appears from the evidence that defendant, his father and mother, his brother and his own daughter all lived in the same house. The prosecutrix testified that her father, in the presence of her grandmother, made her go with him to hunt bees; they were gone but half an hour and returned to the house; she testified that defendant picked her up like a child when a short distance from the house, carried her into the brush and against her struggles and protests committed the act. She said: "I told him I would tell on him. He said he didn't want me to. I said I would. He said he would kill me if I did." She testified that they went back to the house, and she there met her grandmother but said nothing about the affair. Speaking of the family relations she said: "We were as friendly as any family up to the time my father was arrested. I think he was arrested in February." Her sister, Emma Scott, lived near by; they met several times before January 24th, when complaint was first made to her; there is no explanation given for withholding the complaint from her sister for so long a time; there were no threats from the defendant other than as mentioned at the time of the act, and there is nothing to show that the prosecutrix was in fear of injury should she have told some member of the family; it is in evidence,

and not disputed, that Mrs. Shields, an aunt of prosecutrix, was at the Lambert house January 12th and staid there three days, and to her nothing was said; two of her uncles came at intervals and staid a day and a night at a time, and to them she said nothing; there seems to have been no restraint put upon her movements, except that her grandmother did not want her to visit Emma Scott; she had opportunity to complain, and no sufficient, or indeed any reason is given for not complaining to her grandmother, if the matter was too delicate to be mentioned to one of her uncles or her grandfather; her mother died when she was five years old and her grandmother reared her; there is no reason given by her why she was unwilling to confide in her grandmother. During a long cross-examination she did not claim that she made no complaint because of her father's threat to kill her if she told, and in her chief examination she did not speak of the threat as a reason for not telling anyone. When this class of testimony is admitted it becomes independent and original evidence of the offense and is received as corroborative of the facts as narrated by the prosecutrix, and hence to take it out of the category of hearsay evidence the complaint must be immediate, or at the earliest practicable moment after the alleged offense, or the delay must be satisfactorily excused or justified. The cases are numerous in which the general question is discussed. (See the cases cited *supra* from our own court. See, also, the cases grouped in 19 Am. & Eng. Ency. of Law, 959, et seq.)

2. Christopher Lambert was a witness for the defendant. Upon cross-examination his attention was called to his testimony given before the justice of the peace, and the deposition was read. Upon redirect examination defendant's counsel sought to give the witness an opportunity to explain a portion of his former testimony. "The court. This is introduced as a record (referring to the deposition.) I don't think he has a right to explain that record. I don't think you can permit any explanation of what occurred at that time. He can explain what occurs at that time. You cannot vary the record—there is no way to rebut that record —the record is a record." The learned judge seems to have fallen into the error that a former deposition given by a witness, when introduced for the purpose of impeachment, has all the sanctity of a judgment, and is subject to like rules as to its conclusiveness.

If a witness can be confronted with his former deposition and made to admit or deny its accuracy, the principle which the learned judge relied upon would be quite as much violated as if the witness were allowed to explain his former testimony. It was reversible error thus to take away from this witness his right to explain, for section 2052 of the Code of Civil Procedure expressly gives it to him. and the statute states only an elementary rule. (1 Greenleaf on Evidence, sec. 462, and notes; *People v. Wessel,* 98 Cal. 352.)

3. Error is assigned in permitting the prosecution to read the entire deposition of this witness taken in the justice's court at the preliminary examination. It is claimed that such parts only as contradicted the witness were admissible. (Citing *People v. Devine,* 44 Cal. 452.)

The witness was asked to examine the document, and was asked if that was his testimony, to which he replied: "I can tell better if I hear it read over." Counsel for defendant objected and was overruled. The court remarked that "there is no other way to present this matter to the court and jury except in the manner presented by the district attorney." After the reading had progressed somewhat counsel for defendant again objected to reading the whole deposition, and stated that the witness did not call for the reading, but only said he could recognize the document if read. The court permitted the entire testimony to be read. After the reading was concluded the court remarked: "What do you propose to do with that? Of course this was not for the jury; it was simply being read to the witness. Now he says that was his testimony in Round Valley. Mr. Sturtevant (district attorney): I believe the purpose has been subserved as showing whether the witness has made the same statement—The court, interrupting: You understand there is nothing before the jury about this. . . . . The court stated that it was only permitted to be read to determine whether that was his evidence given at that time. I will tell the jury now, they will not consider that proposition as it now stands." The witness was then permitted to state that the document as read was his former testimony. It is not permissible to introduce in evidence against defendant's objection the entire former deposition of the witness on the stand unless it is in its entirety con-

tradictory of his testimony given at the trial. The proper course is to read those portions only that are contradictory, and then "they must be shown to the witness before any question is put to him concerning them" if in writing. (Code Civ. Proc., sec. 2052.) Of course the witness may ask to have them read to him instead of being shown to him, and this meets the statute; but it is improper to read the whole of the former testimony under pretense that some portions are contradictory of his testimony at the trial. The court seems to have had this view, and undertook, but not effectually, we think, to enforce the rule.

4. Upon cross-examination of the prosecutrix the following question was asked her: "Didn't you in the latter part of January or the 1st of February, in a conversation which was had at your house with Geo. Lambert (her brother), tell him that you, Frank (another brother) and Em. Scott (a sister) were putting up jobs on your father, meaning thereby to get him into San Quentin, away from there, so that you could go and live with Emma Scott?" The court sustained an objection to this question as irrelevant, immaterial, and indefinite, and defendant excepted. We think the court erred in this ruling. The announced theory of the defense was that the charge was a made-up story by the prosecutrix and for the purpose of getting away from her father's control. A similar question was allowed in *People v. Gardner,* 98 Cal. 132. We think the question was sufficiently definite as laying the foundation for impeachment. (*People v. Bosquet,* 116 Cal. 75; *People v. Turner,* 65 Cal. 540.)

5. An instruction was given by the court on its own motion relating to the testimony of Alice Foster and Emma Scott, as follows: "If the jury believe from all the evidence adduced upon that subject (the complaint by the prosecutrix) that they were the first persons the prosecutrix saw in whom she placed a friendly confidence after the act was alleged to have been committed, and that she communicated to them at the first opportunity that her person had been forcibly outraged, then you have a right to consider such communication as a circumstance in corroboration of the testimony of the prosecutrix." This instruction was error, for the reasons given in connection with the testimony of these witnesses. As the testimony was inadmissible the instruction was necessarily error.

6. Upon the point made that the evidence is insufficient to justify the verdict we do not feel at liberty to comment, as the cause must go back for a new trial.

It is advised that the judgment be reversed and the cause remanded for a new trial.

Searls, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the cause remanded for a new trial.

Garoutte, J., Van Fleet, J., Harrison, J.