[Civ. No. 261. Third Appellate District.—February 6, 1907.]

## MARY LANIGAN, Respondent, v. DAVID NEELY, Appellant.

BREACH OF PROMISE OF MARRIAGE—SEDUCTION—PLEADING—AGGRAVA-
TION OF DAMAGES.—In an action for a breach of promise of marriage, the plaintiff may plead seduction brought about by reason of the promise, and the reliance of plaintiff upon the good faith of the defendant in making the promise, in aggravation of the damages for breach of the promise, and to be proved as bearing upon the question of exemplary damages.

ID.—INJURY AND MEASURE OF DAMAGES—ACTION ALLIED TO TORT.—
Though the wrong in an action for breach of promise of marriage arises primarily through the breaking of the contract, yet, as respects the injury and the measure of damages therefor, the action is differentiated from an action of tort, more in the degree and extent of the injury, than from any actual or intrinsic distinction.

ID.—JUDGMENT A BAR TO ACTION FOR SEDUCTION.—A woman who has been seduced under promise of marriage may maintain an independent action for the seduction; but where she has pleaded and proved it in aggravation of damages in an action for a breach of promise of marriage, and has recovered exemplary damages in such action, the judgment rendered therein is a bar to any subsequent action for seduction based upon the same facts.

ID.—VERDICT NOT EXCESSIVE—PROOFS—FINANCIAL ABILITY OF DE-
FENDANT.—*Held*, that, under the facts pleaded and proved, a verdict for the sum of $8,000, which is much less than the amount claimed, and is not disproportionate to the pecuniary condition of the defendant, which may be properly considered, is not excessive, and cannot be disturbed upon appeal.

ID.—SUPPORT OF VERDICT—WEIGHT OF EVIDENCE—CONFLICT.—The jury are the exclusive judges of the weight of the evidence, and their verdict upon conflicting evidence cannot be disturbed.

ID.—EVIDENCE—KNOWLEDGE OF BIRTH OF CHILD.—The knowledge of the birth of a child from plaintiff, by her relatives, which was claimed to have been the result of the seduction alleged, was properly proved, as being relevant, material and competent evidence upon the question of damages.

ID.—IMPEACHMENT OF DEFENDANT—INCONSISTENT STATEMENT—IN-FORMAL DEPOSITION.—The defendant was properly impeached by proof of statements made by him in a previous deposition, inconsistent with his testimony upon the trial, where the proper foundation was laid, upon cross-examination, by showing him the deposition and giving the time, place and persons present, and asking him if he did not so testify; and an objection that the deposition was not one in fact or law, because it had not been read to the defendant, corrected or subscribed by him, was properly overruled.

ID.—SCOPE OF CROSS-EXAMINATION—TESTING DEFENDANT'S CREDIBILITY —DENIALS IN CHIEF—LETTER FROM PLAINTIFF UNREPLIED TO.— Where defendant in chief denied the promise to marry, the sexual intercourse, and plaintiff's testimony that when she informed him of her condition he advised her to see a physician, gave her money to pay the fee and requested her to write the result, it was within the general scope of his direct testimony, and was proper on cross-examination, as tending to test his credibility and discredit to some extent his testimony, to ask him whether he had not received a letter from plaintiff informing him that a physician told her she was in a delicate condition, and that he must now keep his promise to marry her, to which he made no reply, and to compel him to answer the questions.

ID.—REPUTATION OF DEFENDANT—CHASTITY AND MORALITY—''IN-TEGRITY''—HARMLESS RULING.—Where a number of witnesses were allowed to testify on the part of the defendant to his general reputation, where he resided, for chastity and morality, the refusal to allow a question as to his reputation for ''integrity,'' assuming, without deciding, it to be erroneous, was not prejudicial.

ID.—EXPERT TESTIMONY OF PHYSICIANS—REBUTTAL—HYPOTHETICAL QUESTION BASED ON EVIDENCE.—The testimony of a physician, as an expert, in rebuttal of evidence, tending to show impotency of the defendant to perform the act of sexual intercourse, based upon a hypothetical question including the evidence for the plaintiff and the testimony of the defendant, was admissible to show the defendant's ability to perform the act of copulation.

ID.—MISCONDUCT OF PLAINTIFF'S ATTORNEY—CURE OF IRREGULARITY.— The misconduct of the plaintiff's attorney in referring to an offer of compromise not included in the record was cured by the prompt

action of the court in striking out the statement, and immediately instructing the jury to disregard it.

ID.—INSTRUCTIONS—REFUSAL OF REQUESTS EMBODIED IN CHARGE.—It was not error for the court to refuse to give requested instructions which were otherwise embodied in the charge of the court.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Snook & Church, for Appellant.

Sullivan & Sullivan, for Respondent.

HART, J.—This is an action for damages for breach of promise of marriage. The case was tried by jury, the plaintiff obtained a verdict for the sum of $8,000, and thereupon the court caused judgment to be entered in her favor in the amount found by the jury. Defendant appeals from the judgment and an order denying his motion for a new trial.

The complaint, after alleging that both plaintiff and defendant are unmarried, their mutual agreement and promise to marry, the violation and breach by defendant of such agreement and promise, and other facts sufficiently well pleaded to render the complaint immune from successful attack by a general demurrer, proceeds in paragraph 6 thereof: "After said promise to marry was made by defendant, as aforesaid, he seduced and had sexual intercourse with plaintiff. Said seduction and sexual intercourse were brought about and accomplished by means of said promise previously made, through defendant's persuasions and importunities, and by reason of plaintiff's reliance upon the good faith of defendant, in making said promise, and her belief that defendant intended to and would marry her, in pursuance of his said promise."

Further, in paragraph 8 it is averred: "By reason of defendant's breach of his said promise to marry plaintiff, and her seduction by defendant, plaintiff became greatly distressed in mind and body, suffered humiliation and disgrace, and will suffer humiliation and disgrace the remainder of her life, became and is now sick and will remain sick for a long time to come, all to her damage in the sum of twenty-five thousand ($25,000) dollars."

The defendant demurred specifically and generally to the complaint, the demurrer was overruled by the court, and thereafter an answer was filed, specifically denying all the material averments of the complaint. Appellant has specified a number of errors (in addition to that claimed in the order of the court overruling the demurrer), involving rulings of the court, insufficiency of the evidence to sustain the verdict, or what is tantamount thereto, excessive damages under the evidence as presented by the record, and instructions given and refused. We will take up the points in the order in which they are presented.

Undoubtedly, the theory upon which counsel for respondent drafted the complaint in this action, and, manifestly, the one upon which it was tried by the court below, was that for the breach of a marriage contract, with averments of seduction for the purposes merely of enhancement or aggravation of damages. But appellant contends that the demurrer to the complaint should have been sustained, because there is contained therein a misjoinder of causes of action, in that an action *ex contractu* has been improperly united with an action *ex delicto,* claiming that if respondent intended to rely upon her action upon contract, with allegations of seduction only in aggravation of damages, she has failed to accomplish her purpose, because it appears from the complaint itself that the character and manner of the averments of seduction necessarily involve the statement of a substantive cause of action in tort, independent of and distinct from that of contract, upon which she declares in the first count of her pleading. Appellant also contends that, assuming the complaint is not obnoxious to the criticism thus made, and that seduction is therefore well pleaded for the purpose of enhancement of damages, he was nevertheless entitled to the ruling on his demurrer, inasmuch as plaintiff is given, by the express terms of the statute (Code Civ. Proc., sec. 374), a right of action for her own seduction. This claim has its inspiration in the reasoning of some of the cases cited by appellant, to be hereafter noticed. And it is further claimed that, if she be permitted in her action for breach of promise of marriage to allege seduction in aggravation of damages, she is thereby allowed to do indirectly what the law does not permit to be directly done, that is, uniting an action upon contract with an action upon tort. But a much more serious result which is

seen by appellant in pleading seduction in aggravation of damages in an action upon a breach of promise of marriage, is that, if she should in such a case obtain judgment, she could still prosecute and maintain her action for seduction, because the judgment in the former, treated, properly of course, as an action upon contract, could not be set up in bar of the latter.

We have not been able to find nor have counsel in their briefs cited us to, any California cases which discuss and adjudicate the precise questions thus presented by the demurrer. An instruction to the jury, in *Moore* v. *Hopkins,* 83 Cal. 273, [17 Am. St. Rep. 248, 23 Pac. 318.], to the effect that "a man who enters into a contract of marriage with a woman with improper motives, and then ruthlessly and unjustifiably breaks it off, does a wrong to the woman for which she is entitled to exemplary damages," was criticised and held to be error, because "there was no evidence whatever in the record to show that the defendant, if he entered into a marriage contract with the plaintiff, intended to make any effort to undermine her chastity, or to do any other improper act of that sort." The court in that case does not decide that allegations in the complaint which would make the quoted instruction pertinent would be proper or improper, but neither does it hold that the matters to which the instruction would relate, and which would be the basis of an action *ex delicto* if relied upon alone, could not be pleaded in the action for breach of promise in aggravation of damages.

The crux of the whole matter, as appellant views it, seems to be in paragraph 8, and it is charged that therein are contained "substantive averments of the ground of damages resulting from seduction." Is this true? After alleging mutual promises to marry, refusal on part of defendant, etc., appellant is alleged in paragraph 6 to have succeeded in seducing and having sexual intercourse with plaintiff (we construe the allegation in our own language) through and by reason and as the result of said "promise previously made," and that the same were "brought about and accomplished" how? In the language of the paragraph in question, *"by means of said promise previously made,* through defendant's persuasions and importunities (founded on the promise of marriage), and by reason of plaintiff's *reliance upon the good faith of defendant, in making said promise and*

*her belief that defendant intended to and would marry her in pursuance of his said promise.''* There can be nothing clearer than that paragraph 6 intends to and does allege seduction only in enhancement of damages. And we do not think that an analysis of paragraph 8, keeping in view the averments of paragraph 6, will justify the criticism to which it is subjected by appellant. It, in reasonably clear language, states facts which describe the effect upon plaintiff, resulting from the breach of the promise and the seduction accomplished by means of such promise—facts, it may be said, which common experience teaches would ordinarily be the consequence of such conduct. It merely charges, to paraphrase the paragraph, ''that because of the violation of the contract heretofore alleged, and because of the seduction of plaintiff, as the result of the alleged broken contract,'' plaintiff became greatly distressed in mind and body and became sick, etc. Strike out the allegation of seduction, and still the language of the paragraph that she became ''greatly distressed in mind and body and became sick, suffered humiliation and disgrace,'' etc., could not necessarily be inappropriate nor without truth, because it would be by no means unnatural that such consequences would flow from the violation of a marriage contract, unintensified by the fact of seduction. The act of seduction alleged against appellant is charged to have grown out of and been the direct result of his promise to marry, and it is reasonably certain from the averments of the complaint that seduction would not have occurred but for the previous promise of marriage. We can perceive no analogy between this case and *Lamb* v. *Harbaugh,* 105 Cal. 680, [39 Pac. 56], cited by appellant. There, in the third paragraph of the complaint, plaintiff alleges a trespass upon her real property as a ground for damages. In the fourth paragraph she sets out personal injury as a ground for damages. The court said: ''The complaint cannot be sustained upon the ground that the action is brought to recover damages merely for a trespass upon the real property of the plaintiff under circumstances of such aggravation as entitle her to exemplary damages. It is not in terms limited to a recovery for such trespass, but the fourth paragraph thereof contains substantive averments of the other grounds of damage above shown; and that the complaint was not so considered by the plaintiff is shown by the fact that at the trial she offered proof of the

injuries to her person, and of the effect produced thereby upon her health, not merely at the time of the trespass, but continuing down to the day of trial."

In the trial of the case at bar, as suggested at the outset of this discussion, the case was treated by the lower court upon the theory that it was an action for a breach of promise, under circumstances of such aggravation as to entitle plaintiff to exemplary damages, and the instructions to the jury upon the question of seduction were given upon the hypothesis that the evidence thereon was to be limited and confined to a consideration and determination of the question of exemplary damages alone.

The other points urged under the demurrer, that the allegation of seduction in enhancement of damages is not permissible for the reason plaintiff has her right of action for seduction for such injury, and that a judgment secured in a case of breach of promise, with seduction averred in aggravation, could not be offered in bar of an action for seduction, are, we believe to be, under the authorities, equally as untenable as the first. Some early cases have appeared to hold a different view from that entertained by us on this question, but we believe the weight of authority and the best reasoned cases sustain our position. It would indeed be a singularly unreasonable rule in pleading and practice which would prevent full disclosure of all the facts necessarily growing out of and connected with the breach of a contract of the nature of the one under consideration which would show or tend to show the extent of the injury to the complaining party by reason of the violation of the terms of the agreement. We do not assail the position of the supreme court of Indiana, in *Felger* v. *Etzell*, 75 Ind. 420, cited as an authority by appellant, in the declaration that "illicit sexual intercourse is not the natural, necessary or even customary concomitant or the result of the mere promise of marriage," nor do· we claim that the fact is of itself a circumstance tending to prove such a promise, but we do say that if it can be shown that it was the result of a promise to marry, then there is no conceivable reason, either in law or in logic, why it should not be pleaded and proved as an essential part and element of the injury sustained by the breach of the promise. This practice surely would, without, we think, offending · against section 427, Code of Civil Procedure, conform to the spirit

of the reformed procedure, intended to simplify the practice and minimize the trouble, confusion and expense often attending litigation, and one of whose fundamental and central conceptions was to allow, as far as it could be done consistently with well-established rules of pleading and practice, all cognate matters of difference between the same parties to be litigated and finally adjudicated in one and the same action. It is said in some of the early cases that, although an action upon a breach of promise of marriage is *assumpsit* in form, it has always, as to measure of damages, been classed with actions of tort. (Chitty on Pleading, 148, and cases cited.) And it must be admitted that the effect upon the complaining party resulting from the injury in cases of breach of promise, unaccompanied by seduction, although the wrong arises primarily through the breaking of a contract, so nearly approximates that resulting from acts of strictly a tortious character, that the former are differentiated from actions of tort more in the degree and extent of the injury than from any actual or intrinsic distinction. Even under the rigorous rules of common-law procedure, with its stubborn and unyielding forms and numerous fictions, in an action upon breach of promise of marriage, it was allowable to plead and prove seduction under the promise as an element of punitive or exemplary damages. To now hold that under our modern procedure, distinguished for its simplification of methods for the administration of justice, this cannot be done, must, it seems to us, force the admission that in this respect at least our procedure has made no advance upon that of the common law.

In *King* v. *Kersey,* 2 Ind. 402, it was held that in an action for breach of a marriage contract, the plaintiff might prove seduction to enhance damages. In *Cates* v. *McKinney,* 48 Ind. 565, [17 Am. Rep. 768], the supreme court uses language which would seem to overrule its former decisions on this point. It is there said: "When the cases in this court were decided, a woman could not prosecute an action for her own seduction. Now, by the Civil Code, she can maintain such action. If, in an action for a breach of marriage contract, she can receive damages for seduction also, without alleging it, she can, contrary to all rules of correct pleading, evidence and practice, sue upon one cause of action and give in evidence and recover upon two. And if she can unite them in

the same complaint or paragraph, she can unite a cause of action upon contract with another founded upon a tort"; citing Parsons on Contracts, 70.

But even in that case the court declines to decide whether or not in an action for violation of a marriage contract seduction can be alleged and proved. It says: "All that we need decide, and all that we do decide is, that under a complaint, in such case, which contains no allegation of seduction, evidence of that fact cannot be admitted to enhance the damages."

*Perkins* v. *Hersey,* 1 R. I. 494, supports the view that seduction cannot be alleged to enhance damages in a breach of promise action, because "we have a statute which affords the plaintiff a remedy for the injury thus done her in more appropriate form."

*Conn* v. *Wilson,* 2 Over. (Tenn.) 234, [5 Am. Dec. 663], is to the same effect, as are also *Weaver* v. *Bachert,* 2 Pa. St. 80, [44 Am. Dec. 159], and *Gring* v. *Lerch,* 112 Pa. St. 244, [56 Am. Rep. 314, 3 Atl. 843]. The case of *Gillet* v. *Mead,* 7 Wend. (N. Y.) 193, [2 Am. Dec. 578], also cited by appellant, is not in point. That was an action for seduction, for debauching plaintiff's servant, for damages for loss of service. Evidence was admitted of defendant's promise of marriage to her previous to having carnal knowledge of her. The master (plaintiff) was in no way interested in any contract between the female and the defendant. His injury, which rested alone in tort, consisted in the loss of service of the female. He was not and could not be injured in any manner or degree by a breach of the contract of marriage, if any existed. Hence, averments and evidence thereof were immaterial.

Judge Parsons, in his work on Contracts, second volume, page 71, ninth edition, seems to be of opinion that exemplary damages for seduction are not recoverable in an action for breach of promise, and adds, "that by strict rules of law should, we think, be excluded, where the plaintiff was in actual or constructive service, *or lived in a state in which the statute law gave her an action for the seduction, and not otherwise.*"

The case of *Felger* v. *Etzell,* 75 Ind. 420, relied upon by appellant, was where the trial court struck out of the complaint for breach of promise of marriage allegations of seduc-

tion in enhancement of damages. Upon the trial, however, the court permitted the plaintiff to prove that at about the time the defendant promised to marry her, as alleged, they engaged in illicit sexual intercourse. The evidence was admitted upon the theory that the circumstance was one competent to be considered in the determination of the question of whether or not a contract was made by the parties to the action, and in its instructions the court limited the consideration of the fact of seduction by the jury to that question alone, saying that it could not be considered as affecting the question of the amount of the damages which they might assess against defendant. The supreme court, upon the authority of *Cates* v. *McKinney,* 48 Ind. 565, [17 Am. Rep. 768], as to the point that the evidence could not be considered in enhancement of damages because the fact of seduction was not pleaded, and upon principle as to the purpose for which it was admitted and to which it was limited by the trial court, reversed the case.

We have examined all the cases cited by appellant bearing upon the point under discussion, and, while some of them seem to sustain his views, we yet feel sure of our position that it is not well taken. If it be admitted that the cases reported in 48 and 75 Indiana support the contention of appellant (and we do not concede that they clearly and explicitly do so), then the rule therein enunciated has been subsequently changed and reversed, not only by the supreme court of Indiana but by all the courts of last resort where the precise question has been presented. And we think, as we have before asserted, that the reasoning in the cases cited by respondent upon the point is by far and infinitely stronger and more conformable to principle than that which leads to the other conclusion.

In the case of *Haymond* v. *Saucer,* 84 Ind. 9, an action of breach of promise and seduction in aggravation of damages, the court says: "There is some plausibility in the suggestion, that to uphold the instruction results in combining in the same action matters of contract and of tort; but this objection, we think, ought not to prevail. It would exclude the consideration of seduction, also, as an element of damages in such a case, the admissibility of which, when pleaded, this court, as well as others, has often recognized," citing a large number of cases. In that case the court further says: "The fact

4 Cal. App.—49

that seduction, accomplished under some circumstances, is a crime, is no reason why it may not be the subject of a civil action; and if, instead of making a separate cause of action, the injured party chooses to plead it as a cause for aggravation of damages in a suit for a breach of the promise of marriage, under which it was accomplished, there is no good reason why it may not be done." In Indiana, at the time of the decision in *Haymond* v. *Saucer,* there was a statute, similar to our own, authorizing an unmarried female to maintain an action in her own right for seduction.

In *Spellings* v. *Parks,* 104 Tenn. 351, [58 S. W. 126], upholding the ruling denying the demurrer to a complaint in a suit for breach of promise and seduction, the court said: "This is not error. The seduction is merely alleged in aggravation of damages, and it has been held in a number of our cases that in an action for breach of a marriage contract the plaintiff may give in evidence, in aggravation of damages, that she was seduced by the defendant." In that state was also, when that case was decided, a law giving an unmarried female a right of action for her own seduction.

"It is well settled," says the court in *Davis* v. *Pryor,* 3 Ind. Ter. 396, [58 S. W. 660], (an Indian territory case), "that evidence of seduction is admissible in aggravation of damages," in an action for breach of a marriage contract.

In *Poehlman* v. *Kertz,* 204 Ill. 420, [68 N. E. 467], it is said: "But aside from this consideration, it was competent, under the pleadings, to prove the seduction if it occurred in consequence of the promise. It is permitted, in such a case, to be shown in aggravation of the damages." The court then quotes as follows from *Fidler* v. *McKinley,* 21 Ill. 308: "In a case of a breach of promise accompanied with a seduction, the injury is infinitely greater than where there is only a breach of promise." The court proceeds: "Counsel argues that seduction is not the natural result of a promise of marriage. Certainly not; but when seduction follows in consequence of the promise, degredation, loss of character and happiness are the direct result of a breach of that promise. In other words, the injury results from the breach—not the making of the contract." And it is so held in *Leavitt* v. *Cutler,* 37 Wis. 46; *Giese* v. *Schultz,* 69 Wis. 521, [34 N. W. 913] ; *Musselman* v. *Barker,* 26 Neb. 737, [42 N. W. 759] ; *Fleetfoot* v. *Barnett,* 11 Colo. App. 77, [52 Pac. 293] ; *Liese*

v. *Meyer,* 143 Mo. 547, [45 S. W. 282] ; *McKinsey* v. *Squires,*
32 W. Va. 41, [9 S. E. 55] ; *Osmun* v. *Winters,* 25 Or. 260,
[35 Pac. 250].

The Oregon statutes allow an action for seduction by an
unmarried female over the age of twenty-one years. (General Laws of Oregon, sec. 35.)   In the Oregon case cited
(*Osmun* v. *Winters, supra*), the court said that: "The common-law practice is substantially uniform in admitting such
evidence (of seduction in enhancement of damages), and is,
we think, based upon sound principles."

In *Sheehan* v. *Barry,* 27 Mich. 219, the opinion of Justice
Campbell is so interesting and the reasoning so cogent that we
quote therefrom *in extenso:* "The seduction which is allowed
to be proven in these cases is brought about in reliance upon
the contract, and is itself in no very indirect way a breach of
its implied conditions.   Such an engagement brings the parties necessarily into very intimate and confidential relations,
and the advantage taken of those relations by the seducer is
as plain a breach of trust in all its essential features as any
advantage gained by a trustee, or guardian or confidential adviser, who cheats a confiding ward, or beneficiary, or client,
into a losing bargain.   It only differs from ordinary breaches
of trust in being more heinous.   A subsequent refusal to
marry the person whose confidence has been thus deceived
cannot fail to be aggravated in fact by the seduction.   The
contract is twice broken.   The result of an ordinary breach
of promise is the loss of the alliance and the mortification
and pain consequent on the rejection.   But in case of seduction there is added to this a loss of character, and social
position, and not only deeper shame and sorrow, but a darkened future.   All of these spring directly and naturally from
the broken obligation.   The contract involves protection and
respect, as well as affection, and is violated by the seduction
as it is by the refusal to marry."   And the learned justice
then meets the claim by appellant here that there is danger,
if seduction can be pleaded and proved in such an action, that
it would not operate as a bar to a second action by plaintiff
for seduction, in the following language: "And it is better
for all parties, and more consonant with public policy, that
where justice can be fully accomplished in one suit, no one
should be driven to begin more than one.   And where this
rule is respected, there can be no danger of injustice by a

second prosecution. The maxim that no one shall be twice vexed for the same cause of action will always prevent any plaintiff from suing twice for the same damages. If they can be recovered in this action under the pleadings, a recovery in this will necessarily be a bar to any future action.''

There are many other cases which are in line with those from which we have quoted. We have examined them with care, and find that they clearly and by unimpeachable reasoning sustain the contention of respondent that under our system it is permissible to plead seduction in aggravation of damages in an action for the violation of a marriage contract. We will not take the time to present excerpts from all those decisions, for we think it sufficient to say, finally, that from our investigations of the questions discussed we feel persuaded of the soundness of the rule contended for by respondent, and are further convinced that a recovery in an action for breach of promise where seduction is alleged in enhancement of damages would, if pleaded, be a bar to an action for seduction founded upon the same facts set up in the former suit.

It is urged that the damages awarded to the plaintiff are excessive, and that for this reason the verdict should be set aside. The rule in this state is so well settled by judicial decision that it has become elementary, that the appellate courts will ''not interfere in such cases unless the amount awarded is so grossly excessive as to shock the moral sense and raise a reasonable presumption that the jury'' in the rendition of its verdict was actuated and influenced by passion or prejudice. (*Marshall* v. *Taylor*, 98 Cal. 55-63, [35 Am. St. Rep. 144, 32 Pac. 867]; *Wilson* v. *Fitch*, 41 Cal. 386; *Harris* v. *Zanone*, 93 Cal. 59, [28 Pac. 845]; *Wheaton* v. *North Beach & Mission R. R. Co.*, 36 Cal. 590; *Howland* v. *Oakland C. St. Ry. Co.*, 110 Cal. 513, [42 Pac. 983]; *Aldrich* v. *Palmer*, 24 Cal. 513.)

In *Lee* v. *Southern Pacific R. R. Co.*, 101 Cal. 118, [35 Pac. 572], it is said: ''While the verdict in these cases, as in all others, is subject to review by the court, it will not be disturbed merely upon the ground that the damages are excessive, nor because the opinion of the court differs from that of the jury, but only where it appears that the excess has been given under the influence of passion or prejudice.''

But in the case at bar it is argued that because the principal testimony in the cause on behalf of plaintiff was that given by plaintiff herself and that the same was ''squarely contradicted'' by that of the defendant, and because, further, the defendant's physician gave testimony tending to show impotency in the defendant and his consequent incapacity to perform the act of sexual intercourse, it is the duty of this court to set aside the verdict. This we cannot do. There is no rule more firmly settled or better understood than the one which removes from within the practice of appellate courts the duty of weighing the testimony or of settling and reconciling discrepancies in the testimony. This duty, under our system, is, happily, committed to the jury who see and hear the witnesses, and who, having thus heard the evidence, must weigh it by the light of all the tests afforded by legal rules, and finally determine the truth concerning the questions in dispute. And when they have thus reached a conclusion in cases upon evidence in which there appears a substantial conflict, their findings are conclusive upon us, and cannot be disturbed. But do the facts disclosed by the evidence justify the contention of counsel that the verdict is excessive? The rule that the pecuniary condition of the defendant may be considered in determining this question is conceded. According to his own testimony, the defendant owned, at the time he is alleged to have agreed to marry plaintiff, money and real property of the aggregate value of $14,009.83. To this amount, it is contended by plaintiff, should be added the sum of $2,500 which defendant claimed to have paid to his nephew. This would bring the extent of his wealth, measured in money, up to a total of $16,509.83. It is insisted that the amount of the verdict, when compared to the total value of defendant's possessions, is so excessive as to warrant us in declaring or indulging the presumption that it was brought about by passion or prejudice. We think that, under all the circumstances of the case, as found by the jury, the verdict is not excessive in any view of the case, even if the item of $2,500 mentioned is not to be computed in estimating the value of his estate. The injury inflicted upon the plaintiff by the conduct of the defendant is irreparable. The acts superinducing that injury were incomparably reprehensible. We must believe the facts as the jury found them, and, so believing, we do not hesitate to say that there is even **no act**

denounced as criminal of which the meanest of the human family is capable so diabolical and dastardly as the impulse which prompts any man, old or young, in the full possession of his intellectual faculties, to wantonly and ruthlessly rob, by means as false as they were ignominious, a young and inexperienced maiden, without the protecting care and cautious solicitude of a father, and, still worse, the daughter of a lifelong friend, between whom and his family the most cordial and intimate social relations had existed, of the richest and most cherished of the traits which go to form human character. Mercilessly thrown out into the world, so to speak, rejected by the man who deliberately and by false pretenses betrayed her, and, thus dismantled of the priceless armor of virtue and honor, and exposed to the scorn and contumely of her friends and acquaintances, and, it may even be added, to relentless humanity, in general, is it possible that money damages can repair, in any degree, so grievous an injury? We think the verdict is not excessive. The defendant, advanced in years and to a point in life where the probability of his living much longer does not exist, with no one dependent upon him for sustenance and support, is still left with a competence upon which he can subsist by the practice of ordinary habits of frugality. If, under these circumstances. he cannot do this, then, in the absence of other features of the record than those urged justifying us in declaring the verdict to be excessive, we must leave him to reap the fruits of his own folly and perfidy.

The rule that appellate courts will not disturb the verdict where there is a substantial conflict in the evidence renders it unnecessary for us to take up a detailed discussion of the testimony in this case; yet there can be no impropriety in saying that the record shows much more evidence than merely the testimony of the plaintiff and the "flat contradiction" (as it is put by appellant) of the same by the defendant, as is contended. Indeed, there are many circumstances testified to by the mother and sister of the plaintiff which tend strongly to corroborate the story of the plaintiff. The cross-examination of the defendant revealed weaknesses in his statement, and it may be added that if we felt called upon to search for reasons why the jury discredited the testimony of defendant, we need go no farther than that portion of his testimony in which he declared that he had sold

a piece of his realty for $2,500 and had paid the money to his nephew to liquidate, as he termed it, "a debt of honor." He said that this relative had told him in the lifetime of his wife that the latter had borrowed from him certain sums of money, the exact amount of which he never apprised defendant of. He said that he had never mentioned the matter to his wife, and, when pressed for an answer as to how much the "debt of honor" amounted to, he replied that he did not know how much it was, whether it was ten dollars or a thousand dollars—but that all that he did know about it was what his nephew had told him. So improbable a story, coming from a man whose intelligence is not impeached, could not be believed even by the most credulous.

Certain rulings of the court are complained of. The mother of plaintiff was asked on her direct examination, "What is your daughter doing?"—referring to the time just previous to and about the date of the trial. She replied, "She is wet nursing." This question was objected to. The plaintiff had previously been asked a similar question and returned a similar reply. If there was error in overruling the objection (and we do not decide that there was), the reply of the witness was harmless. The plaintiff was asked, "State, Miss Lanigan, the names of any of your relatives, if there be any, who knew of the birth of this child." Objection to this question was overruled and she replied: "My mother and sister. I haven't seen any of my other relations. I don't know whether they know it or not." In *Reed* v. *Clark*, 47 Cal. 198, evidence was introduced that the plaintiff, within a few days after the proposal of marriage by defendant and acceptance by her, had announced the fact of the engagement to a number of ladies with whom she was intimate and whom she invited to attend the wedding. The evidence was objected to but allowed. The supreme court, in approving the ruling of the lower court, said: "It cannot be doubted that knowledge of the fact of a marriage engagement by the intimate friends and relatives of a party to the contract, with whom she has frequent and familiar intercourse, would increase in a considerable degree the annoyance and mental suffering occasioned by a sudden discontinuance of the relationship." The fact was offered as an element to be considered in the estimation of damages, and the evidence limited to that point by the trial court. **To**

the same purport is the ruling in *Liebrandt* v. *Sorg*, 133 Cal. 572, [65 Pac. 1098]. We can see no distinction in principle in the rulings in those cases and the one now under consideration in the case at bar. If, as we have held, seduction may be proved in aggravation of damages, when pleaded, what reason can be suggested why the knowledge of the fact of the birth of the child, claimed to have been the result of the seduction alleged, by other people, offered as an element in the assessment of damages, would not be relevant, material and competent testimony? We know of no reason. The answer of the witness could not, however, in any view, have done the defendant injury, as the mother and sister of plaintiff had previously testified, without objection, that they knew of the fact of the birth of the child, and the answer of the witness only involved a fact of which the jury had already been made cognizant.

Before the trial, the deposition of the defendant was taken at the office of the attorneys for the respondent. The deposition was transcribed, but was not read to the witness and corrected and subscribed by him, required as a prerequisite to its use as a deposition by section 2032 of the Code of Civil Procedure. At the trial, on cross-examination, the defendant was asked as to the color of his hair when he was a young man. In reply he stated that its color then was dark. The purpose of the question was evidently to establish a resemblance between defendant and the child born to plaintiff and which was in court during the trial. Counsel, upon the answer thus given by defendant, then asked him if he did not testify when giving his deposition that his hair, when he was a young man, was of auburn color. The question was read from the deposition, time, place and persons present being given; but there was no objection to the form of the question or upon any other ground, except that the purported deposition was not one in fact or in law, because it had not been read to the defendant and an opportunity given him to correct it if he so desired, and that he had not subscribed his name thereto. The objection was without merit and the court's ruling thereon eminently proper. "A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places, and

persons present, and he must be asked whether he made
such statements, and if so, allowed to explain them. If
the statements be in writing, they must be shown to the
witness before any question is put to him concerning them."
(Code Civ. Proc., sec. 2052.) The document upon which
this cross-examination was based was offered to the defend-
ant to read before requiring a reply. That the question pro-
pounded was clearly within the rule authorizing the im-
peachment of a witness is beyond doubt. The late case of
*Gasquet* v. *Pechin,* 143 Cal. 521, [77 Pac. 481], puts the
question beyond all cavil. There are, however, many Cali-
fornia cases in support of the correctness of the ruling of
the lower court. (*People* v. *Lambert,* 120 Cal. 176, [52 Pac.
307] ; *People* v. *Bushton,* 80 Cal. 160, [22 Pac. 127, 549] ;
*People* v. *Gardner,* 98 Cal. 132, [32 Pac. 880] ; *People* v.
*Turner,* 65 Cal. 540, [4 Pac. 553] ; *People* v. *Bosquit,* 116
Cal. 75, [47 Pac. 879].)

The defendant, according to the testimony of plaintiff,
when the latter informed him of her condition, advised her
to consult a doctor, and gave her a small sum of money with
which to pay the fee. He requested her to write to him
from her home in San Francisco the result of the examina-
tion by the doctor. In accordance with this arrangement,
the plaintiff consulted a physician and was told by him that
she was in a delicate condition. She thereupon addressed
a letter to the defendant imparting to him this informa-
tion. No reply was made to the letter. Upon cross-exam-
ination he was asked if he had received such letter, and was
required, against the objection of his counsel, to answer
the question. It is claimed that this was not proper cross-
examination. We do not think the court erred in its ruling.
The defendant had in his direct testimony made denial of
a promise to marry plaintiff, denied having been sexually
intimate with her, denied having given her money for the
purpose of paying the doctor, and, in short, denied *in toto*
all the inculpatory statements against him testified to by
plaintiff. The question was in principle the same as if he
had been asked if he had not been personally accused by
plaintiff of the paternity of the child and had made no reply
to the accusation. The plaintiff testified that the letter not
only conveyed to defendant the information concerning her
condition, as the doctor had diagnosed it, but reminded de-

fendant "that he must now keep his promise (of marriage), as there was no time to lose." If the defendant received such a letter and remained silent under the charges which by inference it contained, then the fact of its receipt and his failure to reply might tend in a degree to contradict his denial of the promise of marriage and seduction, or at least discredit to some extent his testimony. "Great liberality should be allowed in the cross-examination of a witness, for the purpose of testing his accuracy and credibility; and where questions asked appear to relate to facts and circumstances within the general scope of the direct examination, it is error to exclude them." (*People* v. *Westlake,* 124 Cal. 452, [57 Pac. 465].) And "the extent to which the cross-examination of a witness shall be carried is, in some degree, a matter of discretion in the trial court; and its ruling will not be disturbed upon appeal if no abuse of discretion appears." (*Grimbley* v. *Harrold,* 125 Cal. 24, [73 Am. St. Rep. 19, 57 Pac. 558].) We think the question was within the general scope of the direct examination.

On direct examination Dr. Rowell, defendant's physician, was asked: "State whether or not the objective symptoms confirmed the subjective symptoms upon your examination in 1900." The court sustained an objection by plaintiff to this question. The ground of the objection, that it was irrelevant and incompetent, and not proper redirect examination, was perhaps not well taken, but the court refused to allow the question to be answered because it was a mere repetition of what the witness had already testified to. The witness on direct had fully explained, referring to defendant's alleged impotency, that in his examination of defendant the subjective and objective symptoms of such incapacity concurred; or, in other words, the physical condition of the defendant coincided with what the defendant had told him of his symptoms as they manifested themselves to him. There was no necessity of repeating the testimony, and, while no harm could have come from permitting the answer, we can perceive none in refusing it.

A number of witnesses were permitted to testify on the part of defendant as to his general reputation where he resided for chastity and morality. The witness, Schmidt, in addition to the question propounded as to his knowledge of defendant's general reputation for the traits mentioned, was

also asked, having said that he knew the general reputation of defendant for integrity, whether it was good or bad. To this question the court sustained an objection. Counsel for appellant insists that the ruling was error because the word "integrity" means, among other significations, "moral soundness," which, he says, is a trait involved in the charge of seduction. Schmidt had already testified, without objection, as had several other witnesses, that defendant's reputation for chastity and morality in the community in which he lived was good. Assuming the ruling to be error, which it is not necessary for us to decide here, we do not think it was prejudicial in view of the other evidence admitted directly bearing upon his reputation for chastity and morality.

The hypothetical question propounded to Dr. Fraser, called as an expert witness for the plaintiff, was within the evidence. The objection was that the question assumed facts not in proof. The defendant was called to the witness-stand by plaintiff in rebuttal and asked a number of questions, the answers to which involved information as to whether or not in his lifetime he had ever suffered from any disease of the genital organs or had in any manner abused himself so as to affect or impair the vitality of those organs. His replies to these questions were to the effect that he had never abused himself, had never had venereal trouble or blood disease of any character, except rheumatism, and had never found it necessary to use a catheter or other instrument to open the canal of his organ of generation in order to pass water. The hypothetical question embraced all these facts and was whether or not, "under such circumstances, and assuming them to be true, that man could perform the act of copulation?" The answer was: "He could, without doubt." There was no error in the ruling on this question.

It is charged that the attorney for plaintiff in the course of his argument to the jury was guilty of misconduct which prejudiced the rights of defendant. Counsel used this language: "We challenge counsel to deny that we offered to dismiss this suit, if the defendant would marry the plaintiff, and legitimize this child." There was no evidence offered or received which warranted the use of the quoted language. It seems to have been used in reply to certain comments made by counsel for defendant in his argument upon mat-

ters foreign to the record. It would save much trouble and expense and serious disappointment to litigants if lawyers could practice and acquire an equanimity of temperament which would prevent the exhibition of the inordinate zeal during the trial of a case which often leads to prejudicial error. The language imputed to counsel, and which, in fact, he admits to have used, was wholly without warrant from the record, but we think the court's action in striking it out and immediately instructing the jury to disregard it, cured the irregularity. It is claimed, however, that the irregularity complained of is not properly before the court, because, under sections 657, 658 of the Code of Civil Procedure, when an application for a new trial is made for ''irregularity in the proceedings of the court, jury, or adverse party,'' it ''must be made upon affidavits.'' It is not necessary, in the view we have taken of the point, to decide this question.

Objections to certain instructions given by the court involve the points we have discussed and disposed of against the contention of appellant raised on the court's order overruling the demurrer. It is insisted, however, that the court erred in refusing to give instructions 16 and 20, requested by defendant. We have carefully examined the instructions given by the court and think the law of the case was fully covered by them. Instructions 24, 25 and 28, which were read to the jury, embrace all the matters contained in the rejected instructions. This was sufficient. We know of no rule of law requiring the court to repeat its instructions upon any point in a case, where the law applicable thereto has already been given in clear and perspicuous language.

We have given the record careful consideration, and have not been able to find any errors prejudicial to the rights of the defendant.

The judgment and order are affirmed.

Burnett, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 7, 1907, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1907.