NEW YORK LIFE INS. CO. v. NEASHAM.

(Circuit Court of Appeals, Ninth Circuit.   April 1, 1918.   Rehearing Denied May 13, 1918.)

No. 3057.

1. WITNESSES ⟨═⟩393(3)—IMPEACHMENT OF WITNESS—TESTIMONY AT INQUEST.
   Where the testimony of a witness at a coroner's inquest was reduced to writing in accordance with Rev. St. Nev. § 7550, but the record was not read by or to the witness, and was not signed by him, a transcript thereof is not admissible to impeach the testimony of such witness in a subsequent case growing out of the death investigated by the coroner.

2. APPEAL AND ERROR ⟨═⟩1050(1)—REVIEW—HARMLESS ERROR.
   In an action on a life policy, where the defense was suicide, and a witness at the trial gave testimony tending to support the defense, the erroneous admission of a transcript of his testimony given before the coroner and offered to impeach his testimony at the trial, must be deemed prejudicial, where the jury, after considerable deliberation, returned and asked that the transcript of the witness' testimony at the inquest be again read to them, which was done.

3. TRIAL ⟨═⟩105(4)—FAILURE TO OBJECT TO SIMILAR EVIDENCE.
   That the defendant insurer, sued on a life policy, consented that the testimony of other witnesses taken before the coroner might be read in evidence, was no waiver of defendant's right to object to the admission of a transcript of the testimony of another witness, given at the coroner's inquest and offered to impeach his testimony at the trial.

In Error to the District Court of the United States for the District of Nevada; Wm. C. Van Fleet, Judge.

Action by Matilda C. Neasham against the New York Life Insurance Company. There was a judgment for plaintiff (244 Fed. 556), and defendant brings error. Reversed and remanded.

⟨═⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Cheney, Downer, Price & Hawkins, of Reno, Nev. (James H. McIntosh, of New York City, of counsel), for plaintiff in error.

Thomas E. Kepner, of Reno, Nev., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The defendant in error brought an action in the court below on a life insurance policy and recovered judgment for the full amount thereof. The insurance company defended on the ground that the insured died as the result of a self-inflicted gunshot wound, the policy containing a provision that in the event of the self-destruction of the insured during the first insurance year, the insurance under the policy should be only the amount of the premiums paid thereon. The insured died under circumstances strongly suggesting suicide.

[1] An important feature of the testimony related to the condition of a pistol which was found lying near his right hand. There was evidence that the deceased had purchased the pistol the day before his death, and that he received it with one cartridge in the chamber and eight in the magazine. The sheriff of the county, who picked up the pistol, testified that at that time one empty cartridge lay near the pistol, and that eight were in the pistol. He had previously testified at the coroner's inquest. On his cross-examination by the plaintiff he was asked whether at that inquest he had not testified that he removed the shell from the chamber, and that there were nine shells in the magazine. He denied that he had so testified, and stated that he had never seen the testimony so taken at the inquest. He was further asked whether he did not testify at the inquest that when he picked up the pistol the safety was on the trigger. He answered that he did not. To impeach his testimony, a certified transcript of a portion of his testimony before the coroner was admitted in evidence, over the objection of the defendant. It read as follows:

"Q. Did you take the gun? A. Yes, sir; I picked the gun up. Q. Is it here now? A. Yes, sir; this is the gun. Q. Is this in the same condition as it was? A. No; I removed the shell from the chamber, and there are nine shells in the magazine. Q. Is it in the same condition? A. It is in the same condition, with the exception that the safety was on the trigger. I took the shell out of the chamber, and there are nine in the magazine."

The admission of the transcript of the coroner's record is assigned as error. Section 7550 of the Revised Statutes of Nevada provides:

"The testimony at such inquest shall be reduced to writing by the justice of the peace, acting as coroner, or as he may direct, and by him, without delay, filed in the office of the clerk of the district court of the county."

There is no provision in the Nevada laws making such testimony so reduced to writing evidence in any other proceeding. The record of the testimony of the witness before the coroner was not read by or to the witness, and was not signed by him, and no witness testified that it was a correct transcript of his testimony, or that he so testified.

The plaintiff contends that the statute above quoted was taken from the California statute, and that, as construed by the courts of that

state before its adoption in Nevada, it authorized the introduction of the record of proceedings before the coroner, for the purpose of impeachment, citing People v. Devine, 44 Cal. 452, and People v. Lambert, 120 Cal. 170, 52 Pac. 307. The latter case has no bearing on the question here involved. In People v. Devine, it was held that the deposition of a witness given before a coroner's jury, and certified and returned by the coroner to the district court as required by the statute, was admissible in evidence for the purpose of contradicting the statement of the witness made under oath on the trial of a person accused of having murdered the deceased, and that a coroner holding an inquest is in the performance of functions judicial in their character. But in that case it appeared that, upon the conclusion of the examination of the witness before the coroner, the testimony taken down by the clerk, was read aloud for the purpose of correction in any particular desired, and was thereupon subscribed by the witness. The court said:

"The proper practice to be pursued by the officer in taking and certifying testimony at an inquest is referred to by Gurney, B., in Regina v. Plummer, 1 Carr. & Kir. 604. It is the practice contemplated by the statute of this state, which in terms requires the coroner to take the testimony of the witnesses in writing and return it to the district court."

In Regina v. Plummer, so referred to, it was held to be the duty of a coroner, before whom an inquisition super visum corporis is taken, to read over to every witness examined on such inquest the evidence he has given, and to desire the witness to sign it. In People v. Devine the court cited, also, Stephens v. People, 19 N. Y. 549, a case in which it was ruled that for the purpose of discrediting a witness:

"His testimony given before the coroner, taken down in writing, read over to and subscribed by the witness, may be read in evidence, and it is not necessary that the paper should be used merely as a memoranda to refresh the memory of a coroner's clerk, by whom it was reduced to writing."

We think it clear that testimony taken before a coroner, and reduced to writing by the coroner, or, as in this case, by a third person, and not read to or by the witness, and not attested by his signature, is not competent evidence wherewith to impeach his subsequent testimony in another case. The general rule is as stated in 40 Cyc. 2744:

"A deposition made and signed by the witness is admissible to impeach him if inconsistent with his testimony, but a deposition taken in another case, and not signed by the witness, is not admissible to impeach him; the proper course being to place the officer who took the deposition on the stand, and prove by him that the witness made the contradictory statements."

[2] That the error in admitting the impeaching evidence in the present case was prejudicial is shown, not only from the reliance placed thereon by counsel for the plaintiff in their brief, but from the fact that the jury, after retiring and deliberating upon their verdict for nearly three hours, returned into court and asked that the transcript of the sheriff's evidence before the coroner's jury be again read to them, which was done.

[3] The fact that by consent of the defendant the testimony of Lalonde, Brown, and Rudolph, taken before the coroner, was read in

evidence in the case at bar, constituted no waiver of the defendant's right to object to the admission of the sheriff's testimony as found in the coroner's record.

The judgment is reversed, and the cause is remanded for a new trial.