[14674. In Bank. — March 31, 1893.]

JESSIE N. MARSHALL, RESPONDENT, v. JACOB S.
TAYLOR, APPELLANT.

98  55
141  85

SEDUCTION — ACTION FOR DAMAGES — SUFFICIENCY OF EVIDENCE — CONFLICT — TES-
TIMONY OF PLAINTIFF. — In an action by an unmarried female to recover dam-
ages for her seduction by the defendant, evidence of the plaintiff that at the
time of the alleged offense she was but sixteen years of age, and until that time
was a chaste and virtuous girl; that she was at the time an employee of the
defendant, who was then engaged in keeping a hotel; that she was stopping alone
in a cottage near the hotel, where she was visited after dark by her employer, a
man of wealth and years, with whom she was upon friendly terms; that after a
conversation upon ordinary topics lasting some time, he gave her a glass of
wine, which she drank, by which her mind was seriously affected, and she be-
came unable to stand up alone without assistance, whereupon he placed his
arms around her and assisted her to the bed, and after expressing affection for
her, repeatedly caressing her and making promises of future friendship and
assistance, he had intercourse with her, is sufficient to sustain a verdict in her
favor, though her testimony was contradicted in every essential point by the
defendant's evidence.

ID. — EXEMPLARY DAMAGES — RAPE — CONSENT — AGGRAVATION OF INJURY. — It is
immaterial in such case whether the plaintiff's evidence indicated that she had
lost consciousness from the effect of the wine at the time the act was committed
so that the defendant was guilty of rape, or that she was conscious at the time
and consented thereto, as in either case the plaintiff is entitled to exemplary
damages. Proof of rape, or the use of force, does not defeat the action for
seduction, but only aggravates the injury.

ID. — DEFINITION OF "SEDUCTION." — The word "seduction," as used in section 374
of the Civil Code, providing that an unmarried female may prosecute an action
for damages for her own seduction, means the use of some influence, promise, art,
or means upon the part of the male, by which he induces the female to surrender
her chastity and her virtue to his embraces. There must be something more
than a mere reluctance on the part of the woman to commit the act, and her
consent must be obtained by flattery, false promises, artifice, urgent importunity
based on professions of attachment, or the like, for the woman: and that rely-
ing solely on such promises or professions of flattery, or artifice, or importunity,
she then being chaste, surrendered her person and chastity to her alleged seducer.

ID. — SEDUCTION BY MARRIED MAN. — It is not necessary in order to constitute a
seduction that there should be a promise of marriage; but it may be committed
by a married man, though the girl is aware of his marriage, if she is young and
inexperienced, and advantage is taken of her.

ID. — EXCESSIVE VERDICT. — A verdict for the plaintiff for twenty-five thousand dol-
lars, in an action for the seduction of a chaste young girl by a married man of
wealth and mature years, cannot be said to be excessive, and will not be re-
versed upon appeal upon that ground.

JURY TRIAL — MISCONDUCT OF ATTORNEY. — A trial court should always be alert to
prevent an attorney from obtaining advantages in jury trials by the practice of
methods not countenanced by the ethics of the profession.

APPEAL from a judgment of the Superior Court of Los
Angeles County.

C. C. Stephens, for Appellant.

The evidence of the plaintiff fails to show a case of seduction. (*Bailey* v. *O'Bannon*, 28 Mo. App. 39 ; *People* v. *Gibbs*, 70 Mich. 425; *Wilson* v. *Ensworth*, 85 Ind. 399; *Breon* v. *Honckle*, 14 Or. 494; *Baird* v. *Boehner*, 72 Iowa, 318; *People* v. *Clair*, 33 Mich. 112; *State* v. *Hayman*, 43 Iowa, 181; Story on Contracts, 458, 490; *Hawn* v. *Banghart*, 76 Iowa, 683; *State* v. *Reeves*, 97 Mo. 668; *Patterson* v. *Hayden*, 17 Or. 238; *State* v. *Primm*, 98 Mo. 368 ; *Hogan* v. *Creegan*, 6 Robt. 138 ; *Delvee* v. *Boardman*, 20 Iowa, 446; *People* v. *Rinker*, 29 Ind. 267; *Broughton* v. *Smart*, 59 Ill. 440; *State* v. *Crawford*, 34 Iowa, 40.) The verdict was excessive. (*Leucker* v. *Steileu*, 89 Ill. 545 ; *Taylor* v. *Skelkett*, 66 Ind. 297; *Doyle* v. *Jessup*, 29 Ill. 460 ; *Blake* v. *Ruble*, 2 Marsh. A. K. 128 ; *Felkner* v. *Searlett*, 29 Ind. 154.)

*W. W. Holcomb*, and *W. T. Williams*, for Respondent.

The evidence clearly shows a case of seduction. (*Morrell* v. *Morgan*, 65 Cal. 575–577; *People* v. *Royal*, 53 Cal. 62, 64.) The damages are not so excessive as to warrant a new trial. (*Stevens* v. *Belnap*, 71 Am. Dec. 392.)

GAROUTTE, J.— This was an action for damages, plaintiff alleging by her complaint that the defendant with force and violence made an indecent assault upon her, and then and there wickedly seduced, debauched, and carnally knew her, when and whereby she became pregnant with child. A trial resulted in a verdict for plaintiff in the sum of twenty-five thousand dollars, and this appeal is prosecuted from the judgment and order denying a motion for a new trial. It is developed by the evidence that the defendant is a man of mature years, of large property interests, and at the time the alleged cause of action arose was residing with his wife and daughters at a seaside resort in San Diego County, and, among his various business callings, was there engaged in keeping a hotel. The plaintiff was an employee of the defendant, engaged as a waitress at the hotel. She was of the age of sixteen years and ten months, had seen considerable of the world, having resided with her mother in various localities, and, as indicated by her evidence and correspondence introduced at the trial, may be considered a bright and intelligent girl for her years.

The proof of the seduction rests alone upon the testimony of the plaintiff, and her evidence is squarely and entirely contradicted in every essential particular by the testimony of the defendant, he denying ever having had any sexual intercourse with her at any time or under any circumstances. Indeed, at every step of the trial, perjury was there in all its hideousness; but all those matters came before the jury, and, as evidenced by their verdict, her statements were believed.

It is now insisted that, conceding the facts to be as detailed by the plaintiff, no case of seduction has been made out by her evidence. Her testimony upon cross-examination as to the circumstances of the act is stronger in her behalf than her testimony in chief, and may be summarized as follows: That in the early part of October, 1888, on a Saturday evening, either the 6th or 13th thereof, about eight o'clock, while she was in her room at her cottage alone, a short distance from the hotel, Taylor visited her, having called upon her once before, and brought her some books. He conversed with her for a while, and then asked her if she ever drank any wine. He then handed her a glass of wine, which she drank. He poured out some for himself, and tasted it, but said it was too sweet; he did not like it. She continues: "In about five minutes from the time I took the wine, I began feeling sick. At first I began to feel sick at my stomach, my head began to go around. I had sensations of tingling all over my body. I never felt that way before. I had difficulty in talking. My voice was husky. That lasted a moment or two. I got up and said, 'I am quite sick, Mr. Taylor.' I got up, but could not stand, my limbs felt so heavy and numb, I could not step. As I stood up, Mr. Taylor stood up, and I rested my hand on the front of the table. As he got up he stepped towards me. I was glad to have support, as I could scarcely stand. I didn't repulse him, because I couldn't stand up. There was in my ears a sound like the rushing of waters. My voice sounded to me very distinct and clear. His voice sounded the same. He put his arms around me, and assisted me to the bed. When he put his arms around me, he bent and kissed me, and assisted me to the bed, and said that he loved me, and 'you poor little girl, I am sorry you are sick.' He said that just before, or just after he kissed me, I don't remember

which. He half carried me to the bed. It was a very short distance. I didn't lay down at once. I sat on the edge of the bed. He sat beside me, with one arm still around me. I can scarcely recollect anything that happened distinctly. I asked him to get me a drink of water. As he got up I fell backwards on the bed, couldn't sit up. He got me a drink of water. He had his arm around my waist, and kissed me again. I asked him to go away, and he said he did not want to leave me if I was going to be ill. He kissed me again and told me that he loved me. . He told me that he loved me, and put his hand in my dress, and asked me if I loved him. And then he asked me if I would care if he stayed with me. I made no reply. I could scarcely speak. I don't remember distinctly what occurred after that. I don't know what happened at all until I knew he hurt me. I had not gone to bed. I know it was wine Mr. Taylor gave me, because I had seen it served to the guests at the hotel." At another stage of the proceedings, in referring to this event, she testified as follows: " Mr. Taylor assured me of his friendship, and promised me that he would also be a friend to me; that he had plenty of means, and I would never want, and he gave me his word that he would never see me in any trouble, and I then yielded. He said these things to me while I was lying in bed. I had a child which was born on August 22, 1889, the defendant was the father of that child. Until I met Mr. Taylor I was a chaste and virtuous girl."

In actions of the character under present investigation where the plaintiff is a young girl, poor and friendless, and the defendant a man of mature years, married and wealthy, it may well be said that the contest is an unequal one; for her youth and poverty are often weapons of victory, and form a citadel of strength in the minds of jurors, which is impregnable to successful attack by the opposition. Thus in her weakness lies her strength, while a defendant's wealth, his family and his gray hairs are elements which, when placed before the jury, often tend only to his own destruction. These things are made plain by a perusal of the history of legal jurisprudence upon the subject, and this unequal struggle between the parties has frequently caused verdicts to be rendered opposed both to the law and the evidence. And the extreme

danger which arises in this class of cases that a man may be despoiled of his good name and his property, demands of courts a careful consideration of the evidence which forms the basis of such verdicts. For these reasons, and from the additional facts that the case as disclosed by the record is a most peculiar one, and that the verdict rendered largely exceeds in amount any verdict returned by a jury in an action of seduction in any of the courts of this country to which our attention has been directed, we have given the record a most careful examination.

As before intimated, the evidence is squarely conflicting; the plaintiff says the defendant seduced her; the defendant says he never had sexual intercourse with her at any time. The plaintiff says she was a chaste and virtuous girl; the defendant's witnesses say in effect she stood but little above the plane of the common strumpet. But the jury were fairly and fully instructed by the court as to the law of the case, including the rules of law applicable to the weight of evidence, and the credibility of witnesses; and upon this conflicting evidence, taken in connection with the law, they found for the plaintiff, and, under an established practice, we have not the right to disturb those findings of fact.

Does the plaintiff's evidence establish a case of seduction? and that brings us to the inquiry, what is the meaning of the word "seduction," as used in the Civil Code, for it is there provided, section 374: "An unmarried female may prosecute as plaintiff in an action for her own seduction and may recover therein such damages, pecuniary or exemplary, as are assessed in her favor." Her evidence may be viewed from two distinct stand-points. Viewed from one stand-point it indicates that she had lost consciousness from the effect of the wine, at the time the act was committed. If this be so, the defendant was guilty of rape, and while it is held in those states where seduction is a criminal offense that proof of a rape will defeat a prosecution for seduction (*State* v. *Kingsley*, 39 Iowa, 439; *State* v. *Lewis*, 48 Iowa, 578; *Crogan* v. *State*, 22 Wis. 444); yet no case is found in the books where a party has failed to recover in damages for seduction when the evidence at the trial disclosed the defendant guilty of the more henious offense of

rape. Such a showing but aggravates the injury, and furnishes ample ground for exemplary damages. Perhaps it was from this stand-point of vision that the jurors viewed this case, and for that reason assessed the damages at such a large amount. It does not lie in the mouth of the defendant to say : "I am not liable to pay any damages in this action, because the evidence discloses I did not seduce the plaintiff, but committed the atro-' cious crime of rape." The complaint in this case is broad in its allegations, and except as to the use of force, the elements forming the measure of damages in a case either of seduction or rape are very similar.

Where a parent sues for the seduction of his daughter, and consequent loss of service, and it appears that the intercourse was accomplished by force, such a showing will not defeat the action, but will aggravate the injury. (*Furman* v. *Applegate*, 23 N. J. L. 28; *Kennedy* v. *Shea*, 110 Mass. 147; *White* v. *Murtland*, 71 Ill. 250.) While the recovery of the parent is based upon a different principle from that involved where the female is the complainant, yet we see no bad effect to follow an application of the same rule in her case. Certainly a court will not be astute in drawing fine distinctions from the evidence in order to discover a case of rape, if such fact would defeat a recovery. For the foregoing reasons we conclude that, if plaintiff was unconscious from the effects of the wine at the time defendant had intercourse with her, her cause of action was not defeated by reason of such fact.

Assuming her to have been conscious at the time the act of intercourse took place, and consenting thereto, was she seduced? "Seduction" is not defined by our statute; and seduction, as recognized at the common law, based purely upon the loss of service to the master, is such, that we are bound to hold our statute, in using the word, intended other things. We think the word is there used in its popular acceptation, as recognized in this country. The court in its instructions to the jury declared the law upon this question as follows: "The word 'seduction,' when applied to the conduct of a man toward a female, means the use of some influence, promise, art, or means on his part, by which he induces the woman to surrender her chastity and her virtue to his embraces. There must be some-

thing more than a mere reluctance on the part of the woman to commit the act, and her consent must be obtained by flattery, false promises, artifice, urgent importunity, based on professions of attachment, or the like, for the woman, and that relying solely on said promises or professions of flattery or artifice or importunity, she surrendered her person and chastity to her alleged seducer. And that relying and being influenced solely by such promises, flattery, artifice, and urgent importunity, she then being chaste, surrendered her person and chastity to her alleged seducer." After a careful examination of many cases, we are satisfied the law is fairly declared in the foregoing instruction, and that such instruction is in line with the authorities in this country. (*State* v. *Bierce*, 27 Conn. 319; *Croghan* v. *State*, 22 Wis. 444; *Brown* v. *Kingsley*, 38 Iowa, 222.) Modern lexicographers define seduction as the act of persuading a woman to surrender her chastity. In its ordinary acceptation it implies a betrayal of confidence, and for that reason a great majority of this class of cases are based upon a violated promise of marriage, but this is not a universal rule by any means; for a married man may seduce a girl, and that, too, though she is aware of his marriage. There are many cases to this effect, but they have arisen generally where the injured parties being young girls and easily beguiled could not be held to the plane of responsibility occupied by women possessing a wider knowledge of the world.

In the present case we have a chaste girl, not seventeen years of age, making her living far distant from her few friends, stopping at night alone in a cottage. She is visited after dark by her employer, with whom she was upon friendly terms, a man of wealth and years. After a conversation upon ordinary topics, lasting some time, he gives her a glass of wine which she drinks, and her mind is seriously affected thereby. He expresses affection for her, repeatedly caresses her, makes promises of future friendship and assistance, and after all these things have been going on for some length of time he seduces her; at least a recital of these events would picture a case of seduction to the ordinary mind. They do not disclose a cold, deliberate transfer of virtue for a consideration. Neither do they describe a sacrifice of virtue to the demands of lustful pas-

sion; but the blandishments, the expressions of friendship, the promises, the wine, weapons of the seducer, were all there. If the plaintiff were a woman of years, with that knowledge of the world which age brings with it at the present day, the case might present a different aspect. The struggle would not have been so unequal, and she would have been held to a stricter responsibility. But we cannot charge her with that judgment and discretion which come only with age and experience. The drinking of the wine seriously affected her, and its administration alone may be well termed an artifice that conduced to her downfall. If these things which she has said be true, and the jury has so found the facts, her cause of action is supported by the evidence.

We have examined in detail the alleged errors of law relied upon by the appellant in the admission and rejection of evidence by the court, and either find them not well taken, or the error, if committed, not prejudicial to appellant.

It is insisted that respondent's counsel was guilty of such misconduct during the progress of the trial as to have prejudiced defendant's case thereby in the minds of the jurors. This misconduct is claimed to have consisted in attempting to get before the jury matters not within the issues by means of asking improper questions and "offers to prove," etc. It was held in the case of *People* v. *Ah Len*, 92 Cal. 282, that this character of misconduct could be carried to such lengths as to justify a new trial, and for that reason a new trial was there ordered. The rule is a most wholesome one, and in a criminal case especially its rigid enforcement will be maintained by the court. A trial court should always be alert to prevent an attorney from obtaining advantages in jury trials by the practice of methods not countenanced by the ethics of the profession. The record here presented does not disclose sufficient in this regard to justify a new trial of the case; neither do we think the showing made for a new trial based upon affidavits sufficient.

We are not prepared to say that the damages are excessive. Courts are not disposed to make smooth the ways of the seducer. At common law in these cases, verdicts of juries were seldom held to be excessive, and this, too, where the parent recovered damages upon the fiction of loss of service. With much greater

reason should we not disturb the amount of a verdict where the party directly injured is the party plaintiff. The law is most liberal in these matters, and rightly so. Through the seducer's arts a young girl has been outlawed from society; she has been cast upon the world robbed of her innocence; an injury has been done which nothing can repair; a loss has been suffered which nothing can alleviate.

For the foregoing reasons let the judgment and order be affirmed.

PATERSON, J., DE HAVEN, J., and McFARLAND, J., concurred.

Justices Harrison and Fitzgerald not having heard the argument, do not participate in the decision thereof.