KATE VERWERS, Appellee, v. HARLEY CARPENTER, Appellant.

**Seduction:** GROUNDS OF ACTION: FORCE: EVIDENCE. An action for.
1  seduction because of a promise of marriage and an exercise of
   seductive arts may be established, although defendant used some

force in accomplishing his purpose. Evidence held to show that plaintiff yielded because of defendant's promise of marriage though using some degree of force.

Same: PLEADINGS. A petition alleging that defendant used physical force in accomplishing plaintiff's seduction, but that she yielded because of her love for him and his promise of marriage, states a cause of action for seduction and is not a charge of rape.

Same: INSTRUCTIONS. Where the petition charged seduction and not rape, although there was evidence that some force was used, and the court fully instructed as to seduction and that plaintiff could not recover unless she had established her theory of the case, failure to instruct on the question of rape was not erroneous, in the absence of a request therefor.

Same: EXEMPLARY DAMAGES. The act of seduction contemplates fraud, deceit and bad faith, which is necessarily willful; and exemplary damages may be recovered regardless of the existence of malice, or any allegation of exemplary damages in the petition.

*Appeal from Marion District Court.*—L. N. HAYES, Judge.

FRIDAY, JUNE 19, 1914.

ACTION for damages because of the alleged seduction of plaintiff by defendant. Trial to a jury. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Crozier & Welch,* for appellant.

*Amos & Van Der Ploeg,* for appellee.

PRESTON, J.—The original petition charged a cause of action for seduction, alleging that in September, 1909, the defendant, by artifice and deceit and promise of marriage, seduced the plaintiff. Defendant answered by general denial, and the cause went to trial upon the issues so tendered.

During the cross-examination of plaintiff she stated that the intercourse was accomplished by force. Whereupon defendant moved to exclude all of her evidence because incompe-

tent, irrelevant, and immaterial, and for the further reason that her testimony shows, without any controversy, that she submitted to the defendant, if at all, not by reason of the promise of marriage, but by reason of physical force, and also moved to strike all of her testimony as to any promise of marriage between her and the defendant for the same reason, and for the further reason that the witness now alleges that it was not by reason of any promise of marriage, but by physical force.

The objections were overruled. Thereupon plaintiff was granted leave to amend her petition. Two amendments were filed, in the first of which she states that she was unwilling to submit to the act of intercourse named therein, but that the defendant used physical force; that, because of her love and affection for him and the promise of marriage existing between them, she did not resist, and made no outcry and complaint; that he came to her bedroom at the home of his father, where she was staying at the invitation of members of his family, and solicited said intercourse; that she yielded to the physical force of the defendant, and did not resist as she would have done except for the promise of marriage and the love and affection she bore the defendant, resulting from his acts and artifices.

The second amendment states that it is made to conform to the proof, and as a second count of her petition, which defendant insists in argument is identical with the first amendment, and this is admitted by counsel for appellee. The only difference we observe in this second amendment between the first and the original petition is that in the prayer in the second amendment, or so-called second count, plaintiff asks $5,000 actual damages and $5,000 exemplary damages. The original petition simply asked $10,000 damages.

After the two amendments to the petition were filed, defendant moved the court to require plaintiff to separate count 1 of her petition into two counts, for the reason that the same states two causes of action; that it states a cause of action for seduction, and also for rape. Defendant also moved to require

the plaintiff to divide the second count of her petition for the same reason. This motion was overruled.

Defendant filed an amendment to his answer, and pleaded the statute of limitations, alleging that the cause of action set forth in the first count of the petition as amended did not accrue within two years from the filing of the said amendment, or within two years prior to the commencement of the action, and pleaded the statute of limitations as to the second count in the same manner. The question as to the statute of limitations has been assigned as error, but has not been argued; but, as we hold later in the opinion that no separate cause of action for rape is charged, the question as to the statute of limitations need not be further noticed.

The errors relied upon by appellant relate, in the main, to the claim by him that the evidence shows rape, and not seduction. The questions so raised and assigned as error are in relation to the two rulings of the court heretofore set out in overruling defendant's motion to exclude plaintiff's testimony; in overruling defendant's motion to require plaintiff to separate; in not withdrawing from the jury all issues of seduction because of failure of proof; in not defining rape and instructing the jury that, if they believed from the evidence that rape was established, the verdict should be for the defendant; in instructing the jury that they could allow exemplary damages; in submitting interrogatories to the jury; and in copying into the instructions verbatim the pleadings. This last assignment is not argued.

It will be proper for us to set out enough of plaintiff's testimony to show the bearing of these assignments of error. It should be stated first that we take it that plaintiff was a

1. SEDUCTION: grounds of action: force: evidence.

Hollander. She was twenty-two years of age; had known defendant since childhood; and the undisputed evidence is that defendant courted her for a year or two. She says that he had proposed marriage to her, and that she had accepted him, but this is denied by the defendant. She was somewhat inexperienced, and it appears

that she did not clearly understand some of the questions. She was doubtless more or less confused on the stand. We shall now refer to a part of her testimony. In her examination in chief, the abstract shows the following:

Q. Did Harley come to your bed that night? A. Yes, sir. Q. About what time did he come to your bed? A. Must have been about 11. Q. Now, I wish you would tell the jury in your own words what took place between you and Harley Carpenter there that night. Did he stop at your bed? A. Yes; he did. Q. What did he say to you? A. I don't remember what he said to me any more. Q. What did he do to you? A. (No reply.) Q. Did he get in bed with you? A. Yes; he did. Q. What did he say to you, that he wanted to do to you? A. (No reply.) Q. Just tell it frankly to this jury now. A. (No reply.) Q. Mr. Amos: Under the circumstances, I am going to ask a leading question. Did he ask you to have intercourse with him that night? (Objected to by the defendant as leading.) The Court: I think this witness ought to tell without the suggestion or direct inquiry, if she can. A. Yes; he did ask me to have what you call that. Q. What did he ask you? Tell the jury. A. Well, he asked to have whatever you call that word. Q. Well, you know what we mean by intercourse? A. Well, yes. Q. Did you do that? A. Yes, sir; after the intercourse I became pregnant. My baby was born in June, 1910. It died shortly after its birth. He refused to marry me.

On cross-examination she testified:

Q. Now, going back to your testimony, I understand you to say that the only reason why you permitted Harley to have intercourse with you was because you could not help yourself; he simply forced you? A. Yes, sir. Q. *Now, then, what kind of force do you mean? You mean he had hold of you and held you? A. No, sir.* Q. Now, you never did consent to have intercourse with him? A. No, sir. Q. Neither on account of marriage relation, or for any other purpose, under any consideration, did you? A. No, sir. Q. Simply because he came there and to your bed and held you down so you could not resist? A. Yes, sir.

Then follows the motion to exclude, which we have heretofore set out, and the filing of the amendments, and then further evidence on cross-examination:

He didn't really force either; he forced some, sure. Q. What do you mean by that, that he forced some; in getting into bed he didn't ask you whether he might get in at all, did he? A. He asked, and I didn't like it very well; no. Q. Now, you said on yesterday, Miss Verwers, that you didn't allow him to have intercourse with you on account of any promise that he had made. Now, isn't that the fact of it, that it was simply because he used force and compelled you that you allowed him to have intercourse with you? How is that? A. I didn't get that. Q. You didn't get that? Q. Well, you understand me when I say what force means? A. Yes; I do. Q. Well, it was on account of his forcing you that he obtained intercourse with you? A. Yes; he forced me. Q. That is, he forced you to permit him to have intercourse with you. That's what you mean? A. I didn't catch that all. Q. You understand me when I say he forced you to give in and have intercourse? A. Yes, sir. Q. Well, I don't know that I can make it any plainer. You said a while ago—or rather on yesterday—that you submitted to his intercourse because you could not help yourself; now, that is true, is it not? A. That is true. Defendant had to go through my room to get to his room, which was between my room and the room where the girls slept. Defendant came home from Pella after I had gone to bed; came into my room; he sat down on the side of the bed and talked to me. This was upstairs. His father was not at home; his mother slept downstairs. Q. When he was sitting talking to you, you just talked in an ordinary tone, didn't you; you didn't try to conceal the fact that you were there talking together, did you? A. I don't understand. Q. Did you talk in an ordinary tone of voice when you were talking to him there on the bed? A. Explain what ordinary means; I can't understand that. Q. Well, just as you talk to other people; just about as loud? A. No; not as loud. Q. Were you trying to conceal the fact that you were there; didn't you want the people to know that you were there? A. I didn't want to give him away; no. I didn't tell him really to leave, no. I don't know how long he stayed there before he got in bed.

The assignments of error, Nos. 1 to 4, inclusive, may be considered together. It is contended by appellant that the quoted testimony of the plaintiff conclusively shows that she did not consent to the intercourse on the ground of the marriage promise, or for any other purpose or consideration; that it took place simply because she was held down and could not resist.

After a careful reading of all of her testimony, we are of opinion that, taking it all together, it does not necessarily show that she did not yield because of the seductive arts alleged to have been practiced by defendant, and that it was for the determination of the jury whether she had established her claim of seduction. The trial court construed the pleadings as charging only seduction, and the cause was submitted to the jury upon that theory, and they were told, in substance, that, unless plaintiff had established the alleged seduction, she could not recover. It is, perhaps, true that plaintiff did not give her consent to the intercourse in express words, but, from all the evidence, the jury may have found that she yielded to the defendant because of the promise of the marriage and her desire to shield him, even though some force was used.

The jury found in answer to an interrogatory, in substance, that physical force was used by defendant, but that plaintiff was induced to yield by reason of false promises, and, as already indicated, we think the finding has sufficient support in the testimony. Two Iowa cases are cited on this point. The case of *Van de Haar v. Van Domseler,* 56 Iowa, 671, is cited by appellant. We think there is a clear distinction between the allegations of the amendment to the petition in that case and the case at bar. A careful reading of the pleading in the *Van de Haar* case shows that rape alone was charged; that the agreement to marry in that case had been terminated. And the allegations of the amendment in that case do not seek to recover because of any false promise or any promise of marriage or other seductive  arts, and there is no claim therein that she

yielded because of any such. The point in that case was as to whether the matter set up in the amendment was barred.

The instant case is more like *Egan v. Murray,* 80 Iowa, 180, cited by appellee. In that case the plaintiff testified that the defendant used physical force to accomplish his purpose, and that she resisted him all she could, but that towards the last she did not resist. She also said that his actions towards her and his treatment of her had to do with her giving in, and it was held proper, because it tended to explain the extent of plaintiff's resistance, and whether the act was accomplished by force, or whether it was effected by means of the undue influence of the defendant. We hold that, even though some force be used, if the plaintiff yielded because of any seductive arts, or if the jury so say from the evidence, that the fact of force being used does not defeat a recovery.

Cases are cited by appellee going even farther than this. *Velthouse v. Alderink,* 153 Mich. 217 (117 N. W. 76, 18 L. R. A.. (N. S.) 587, 15 Ann. Cas. 1111).

In *De Haven v. Helvie,* 126 Ind. 22 (25 N. E. 874), it was charged that force, threats, caresses, and flattering words were used, and the court held that there was no error in refusing the 2. SAME: plead-ings. defendant's motion to separate her complaint into two paragraphs; that the complaint counts upon a single cause of action, the seduction of the plaintiff. It is not rendered double because, among other means employed, it is alleged that the defendant used force, etc.

See, also, on the question of force, 35 Cyc. 1296, where a distinction is shown between civil and criminal actions for seduction, and *Marshall v. Taylor,* 98 Cal. 55 (32 Pac. 867, 35 Am. St. Rep. 144). Mere mutual sexual intercourse, without fraud or seductive arts, does not constitute seduction. It has been held by this court that in a civil action for seduction it is not necessary to show previous chaste character, but in such a case, if chaste character is not shown, no damages may be recovered for loss of character. *Smith v. Milburn,* 17 Iowa, 30; *Olson v. Rice,* 140 Iowa, 630; *Fisher v. Bolton,* 148 Iowa, 651.

We cite these cases to show that, under our statute (section 3470), which provides that an unmarried female may maintain an action for her own seduction, the rule is not the same in some respects as in a criminal prosecution. If the facts show that a female is ravished, she would have a cause of action for that, so that in a civil action for damages the line between seduction and rape is narrow. In one case the sexual connection is obtained by force and in the other by fraud. But, as we have already indicated, the trial court correctly construed the plaintiff's pleadings in this case as charging seduction, and not rape.

II.   Appellant contends that, even though the court properly submitted the question of seduction to the jury, still it was the duty of the court to properly define any issue which arose in the pleadings and evidence; that the court should have instructed the jury in regard to the question of rape. We have already determined that the pleadings do not charge rape, and, as before stated, the court instructed the jury as to seduction, and instructed that, unless plaintiff had established her case on that theory, she could not recover. After defining seduction, the instruction further reads, in part:

3. SAME: instructions.

. . . . And you further find that at the time of the alleged intercourse, or shortly prior thereto, the defendant had given plaintiff to understand, and intended that she should understand thereby, that he expected to marry her, and that she did so understand, and that the defendant at the time indulged in protestations of love and affection for her, and you further find that, but for such false promise, flattery, protestations of love and affection, the plaintiff would not have surrendered her virtue to the defendant, then the proof will be sufficient to establish the charge of seduction, even though you should find that the defendant did, in addition to such artifices, if you find that he did use such artifices, or some of them, use physical force in accomplishing his purposes, provided you further find that the plaintiff was induced to, and did, surrender to his demand by reason of such artifices, false promises, and physical force; and, if you find from the testi-

mony in this case that the plaintiff has so established these facts by a preponderance of the evidence as herein defined to you, then the plaintiff will be entitled to a recovery at your hands. If, however, you fail to so find, then your verdict should be for the defendant.

It would have been well enough, perhaps, to have said to the jury that if defendant was guilty of rape, without seduction, plaintiff could not recover. Defendant did not ask an instruction on this subject. Those given did, in effect, cover the points sufficiently, in the absence of such a request.

III. The court instructed that, if the jury found that plaintiff was entitled to recover actual damages, then exemplary damages might be allowed, saying in part:

If you find from the evidence in this case that a marriage contract was entered into between the plaintiff and the defendant, and that the same was brought about by fraud of the defendant, and not in good faith, but for the purpose of seducing the plaintiff, . . . then you are instructed that you may, in addition to such actual compensatory damages, allow her exemplary damages as will be just punishment to the defendant, and will serve as a salutary example to others.

The only complaint of this is that there is no allegation in the petition, or any amendment thereto, that the proposal of marriage was entered into fraudulently and maliciously; that 4. SAME: exemplary damages. there is nothing in the pleadings or evidence to indicate that the promise of marriage, if any, was not in good faith. It is claimed that it is necessary to so allege under section 3637 of the Code, which provides that, when the party intends to prove malice to affect damages, he must aver the same. This is the rule in some cases. In this case it is alleged in the petition, among other things, that:

About the month of September, 1909, the defendant began to pay attentions to this plaintiff, and for some time previous thereto had called upon the plaintiff at her home, visited her as a suitor, and escorted her to church and places of enter-

tainment; that the defendant, by persuasion, flattery, deceit, false promises, and other artifices, induced this plaintiff to yield up her virtue; that, as one of the means of deception on the part of defendant to accomplish his purpose, the defendant agreed and promised to marry the plaintiff; that the plaintiff relied upon said promise, and, because of such promises, deceptions, and artifices on the part of the defendant, yielded to him; that the defendant failed, neglected, and refused to marry plaintiff; that, because of the acts, deceit, promises, fraud, and artifices of the defendant, the plaintiff was seduced as above set forth.

The abstract does not purport to contain all the evidence. It does appear, however, in the evidence of plaintiff that defendant promised marriage, and the jury could have so found. It also appears that after the alleged seduction defendant refused to marry plaintiff, and that he married another. Defendant does not offer any evidence to show that the promise of marriage was in good faith, nor does he offer any excuse for breaking it. In fact, he denies there was any such promise. We must assume that there was evidence in the record justifying the instruction as to bad faith, if, indeed, the facts which do appear do not do so. Strictly speaking, in a case of this kind it is not a question of malice. The act of seduction contemplates fraud, deceit, and bad faith. It is necessarily willful, and exemplary damages may be recovered, regardless of the existence or nonexistence of the malice of defendant. *Anderson v. Aupperle,* 51 Or. 556 (95 Pac. 330).

See, also, on the question of exemplary damages, 35 Cyc. 1321, 1323. It is not necessary to make an averment of exemplary damages in the petition in order that a recovery of such damages may be had. *Gustafson v. Wind,* 62 Iowa, 281. It was so held in case of malicious prosecution where malice was alleged, but it was there said it was not necessary to claim exemplary damages in the petition. *Davis v. Seeley,* 91 Iowa, 583. In the instant case one of the amendments to the petition did ask both actual and exemplary damages.

IV. It is contended that the trial court erred in submitting

the three interrogatories to the jury. These were: Whether defendant had sexual intercourse with plaintiff; whether physical force was used by the defendant; and whether plaintiff was induced to yield by reason of false promises, etc. All three interrogatories were answered in the affirmative. It is said that, as the court did not submit to the jury the question of rape, the second interrogatory should not have been submitted. What we have already said about physical force disposes of this point. It was, perhaps, unnecessary to submit interrogatory 2, but it was submitted with the others on the theory of the petition as amended and the instructions; that is, that if the intercourse was accomplished by seductive arts, the fact that force was also used does not bar a recovery.

We discover no error, and the judgment is *Affirmed.*

LADD, C. J., and EVANS and WEAVER, JJ., concur.