[Civ. No. 7709. Second Appellate District, Division Two.—May 12, 1933.]

CHRISTINE COLLINS, Respondent, v. J. J. JONES, Appellant.

Schweitzer & Hutton for Appellant.

S. S. Hahn for Respondent.

PARKER, J., *pro tem.*—This is an action to recover damages on account of false imprisonment. The case was tried by jury and verdict returned in favor of plaintiff. After

denial of defendant's motion for a new trial judgment was entered pursuant to the verdict and defendant appeals.

The facts are novel and interesting and demonstrative of the old adage that truth is stranger than fiction. Mrs. Collins, the plaintiff, was the mother of a boy of the age of nine years. The boy's name was Walter Collins. In March of 1928 the boy disappeared and has never been found. As was to be expected, the matter was reported to the Los Angeles police department and a search instituted. With the diligence characterizing modern police methods the search covered practically the entire country, extending, perhaps, abroad. In August of the same year information was received from Illinois that a boy identified as Walter had been located and was being held awaiting further details and the consummation of plans for the boy's transportation west. The defendant was a police officer of the city of Los Angeles of the rank of captain. The matter of the disappearance of the boy came under his detail, either as a part of his regular duties or was a matter of special assignment. Regardless of the routine of the police department the evidence discloses that the defendant ostensibly was in direct charge of the investigation. When the information concerning a boy being held in the east was received, the plaintiff was notified and photographs were sent out to Los Angeles and compared, and likewise there was some correspondence. It was finally decided from the evidence at hand that the boy held was the boy sought and within a short time a boy thought to be the missing son of plaintiff arrived at Los Angeles. This boy was received by the mother, plaintiff herein, with some misgivings. While there was a striking similarity between the boy found and the lost son, yet in many characteristics they differed. It was thought perhaps that the experiences through which the lad had gone might have contributed in a way to the apparent changes, and this might well be the situation in the case of a boy as undeveloped as the ordinary boy of nine years of age. The plaintiff brought the boy to her home, where he remained for a period of some twenty days or thereabouts. During all of this time there was always an atmosphere of uncertainty and doubt. The boy seemed to recall persons and incidents and neighborhood landmarks to an extent that seemed impossible to one not previously familiar therewith.

Some of the neighbors were of the opinion even at the time of the trial that the boy was the missing son. Others, from the outset, including the teacher of the school where plaintiff's son had been enrolled, were extremely doubtful. A third group refused from the beginning to accept the returned youth as the boy they had previously known.

Here we may state the fact to be that this new boy was not the son of plaintiff. After the period of doubt had continued for the length of time mentioned, plaintiff became positive that the boy was not her son and so expressed herself. Thereupon the defendant called her to his office and endeavored to convince her that she was wrong. Failing in this, the defendant then expressed doubt as to her sanity or her honesty and ordered her sent to the psycopathic ward for detention and examination. Accordingly, she was taken to the said ward on a Saturday afternoon. No complaint had been made against her and no warrant had been issued for her apprehension.

There is a stipulation in the record as follows: "Mr. Hutton (counsel for defendant): If counsel wishes a stipulation, I am willing to stipulate that the responsibility for the sending of this lady to the psychopathic ward was the defendant's." This stipulation was accepted and thereby this phase of the case is closed.

The next fact agreed upon is that she was held there from Saturday until Tuesday without complaint or warrant. There being no evidence nor claim that she had committed any offense or that she was disordered in mind to an extent that would or might render her being at large dangerous to the person or property or health of herself or others, it follows that the charge of false imprisonment was completely made out and established.

The arrest being shown, the burden was on the person or persons making the arrest to show justification therefor. (*Sebring* v. *Harris*, 20 Cal. App. 56 [128 Pac. 7]; *Mackie* v. *Ambassador Hotel*, 123 Cal. App. 215 [11 Pac. (2d) 3].)

No question is presented as to the sufficiency of the evidence; therefore we will not detail the defense offered, excepting in so far as necessary to explain other points raised.

At the conclusion of the trial the court gave the following instruction to the jury: "In the trial of this case

considerable evidence has been produced bearing upon the question as to whether or not there was probable cause for the act of the defendant Jones in arresting the plaintiff, Mrs. Collins, on Saturday, Sept. 8, 1928, and directing her commitment in the psychopathic hospital. The court has determined, under the evidence, that that question is one of law and not one for determination by the jury. The court has determined that as a matter of law, probable cause did not exist under the law to justify the defendant Jones in his action in arresting the plaintiff, Mrs. Collins, and causing her commitment to the psychopathic hospital. Under these circumstances, the only question that will be submitted to you for your determination is the amount of damages, if any, the plaintiff suffered by reason of the action of the defendant Jones in causing her arrest and incarceration in the psychopathic hospital. And if you determine that by reason of the said acts of the defendant Jones the plaintiff suffered damages, you will only consider such damages as she may have suffered resulting from her arrest on Saturday afternoon and her detention in the psychopathic hospital from Saturday until the following Tuesday, when a complaint was sworn to by the defendant Jones charging the plaintiff with insanity.'' Appellant attacks this instruction with great show of mettle. The point is made that while probable cause or the lack thereof is always a question to be determined by the court yet the facts upon which the court bases its conclusion should be determined by the jury. In other words, the claim is that where the evidence is conflicting as to the facts upon which the defendant may have acted, the court should submit to the jury the determination of the conflict. We may concede this claim as being supported by the authorities. The question is exhaustively discussed in the case of *Ball* v. *Rawles*, 93 Cal. 222 [28 Pac. 937, 27 Am. St. Rep. 174], and this case has been generally accepted as the leading California authority on the question of probable cause, with particular relation to the respective functions of court and jury. The concession does not dispose of the point raised. The great weight of authority supports the rule that neither actual malice nor want of probable cause is an essential element in an action for false imprisonment. (*Meints* v. *Huntington*, 276 Fed. 245 [19 A. L. R., at page 671], and

cases therein cited.) From these authorities it would be evident that the question of probable cause was not in the case and even an erroneous determination on the lack of probable cause would not have been prejudicial. Going further with the discussion, we find that there was no real conflict in the evidence on the point of probable cause. The record would and does support the conclusion that there was no probable cause even if we accept as true the evidence of defendant.

The most that can be made of defendant's case is that he himself thought the plaintiff's mind was disordered. He based this conclusion on the fact that the mother insisted the child was not her son, in the face of what he thought was conclusive evidence to the contrary. It would seem more reasonable that he mistrusted his own mentality. The record discloses that after a three weeks' association the plaintiff disclaimed the child, and the record further discloses that her disclaimer was warranted and that the child was not her son. No amount of argument could convince a court or jury that the conduct of a mother under these conditions affords even the slightest basis for a doubt as to her sanity.

█ It is next claimed that error was committed in giving the following instruction: "The court instructs the jury that if you find for the plaintiff you should award her as actual or compensatory damages such sum as you find from the evidence will compensate her for any injury you find she sustained by reason of her arrest and detention in the hospital from Saturday afternoon until the following Tuesday. In awarding such damages you may consider the character of her injuries, if any she sustained, also the mental suffering, if any, also any sense of shame or humiliation suffered on account of her arrest and detention, if any, and what injury she sustained to her good name and reputation, if any, and award her such damages as will be fair compensation in the premises." The complaint made is that the instruction authorized damages to be awarded plaintiff for elements not proven, namely, mental suffering, shame, humiliation, loss of good name, reputation, etc. No authority supports the argument. The general rule is that instructions should be based upon evidence actually adduced or upon reasonable inference from the evidence disclosed by the record. (*Risdon* v. *Yates,* 145 Cal. 210 [78 Pac. 641]; *Reynolds* v. *Struble,* 128 Cal. App. 716 [18 Pac. (2d) 690].)

■ The instruction is further criticised on the ground that defendant was not liable for any damage suffered beyond the moment of actual arrest; that after the arrest the imprisonment was under the control of the authorities at the psychopathic ward. Authority cited somewhat squints toward the contention. However, a wrongdoer is liable for damages naturally flowing from his wrongful act. Likewise is it the rule that joint tort-feasors are severally liable. There is no showing nor is there claim made that any person had the right or authority to release plaintiff before a hearing after she was once detained by order of the defendant.

Other instructions are attacked, but the attack is based upon practically the same grounds as hereinbefore discussed. The general argument is mainly on the facts, already determined adversely. Few authorities are cited and these few are not in point.

■ The defendant requested the following instruction: "The only question for you to determine in your deliberation is: What, if any, damage or loss did the plaintiff suffer by reason of her imprisonment?" This clearly demonstrates the theory of the trial and defendant should not now be permitted to change that theory and present questions not embraced therein. This requested instruction admitted the liability and admitted the existence of all of the elements going to constitute the cause of action. The instruction requested was modified by the court by striking out the words "her imprisonment" and adding "the acts of defendant Jones, which the court has heretofore instructed you the defendant is liable for". Appellant makes no complaint as to the instructions referred to, namely, those wherein the court detailed the acts of defendant Jones "for which said Jones was liable". If there was no error in these instructions, and none is urged, then necessarily the modification of the instruction was harmless.

■ It is urged that the court erred in sustaining or not sustaining objections to evidence. On the argument supporting the contention we find a portion of the testimony given *verbatim*. At the conclusion of this recital the argument is condensed to the effect that it is submitted that the testimony was highly injurious to the interests of appellant. It might be said, in passing, that the extent to which evidence adduced by a plaintiff is injurious to the

interests of a defendant is one of the tests of relevancy and materiality. Certainly, testimony of a plaintiff, carrying the burden of proof, which in no way affected the interests of a defendant would be worthless. We have carefully analyzed the testimony and the rulings herein and find no error and we might go a step further and state that the argument of appellant partially concedes this.

We come now to the question of damages. Here it is interesting to note that the record seems to indicate that this was the only point argued to any extent on defendant's motion for a a new trial. The verdict of the jury assessed damages as follows: General damages, $10,000; special damages, $300; exemplary damages, $500. Without a detailed review of the testimony we state that there is not a word of testimony to support the assessment of special damages. Without further comment this item of $300 is stricken from the judgment. On the subject of punitive damages reference may be had to 8 Cal. Jur., commencing at page 861. Our code provides specifically for the recovery of punitive or exemplary damages where the facts show oppression, fraud or malice, express or implied. These references will suffice the present inquiry. There can be no question that if ever punitive damages may be awarded this case presents the occasion. The main argument here as well as in the court below goes to the excessive amount awarded as compensatory damages. In the case of *Riffel* v. *Letts*, 31 Cal. App. 426, which was a case of false imprisonment, the court says, quoting from page 428 [160 Pac. 845, 847]: "Next, it is claimed that the verdict was excessive in amount. As a general rule, what would be a reasonable compensation for the damages occasioned by injuries to the person, is a question committed to the sound discretion of the jury. In considering an attack upon a verdict as excessive, the appellate court must treat every conflict of the evidence as resolved in favor of the respondent, and it must give him the benefit of every inference that can reasonably be drawn in support of his claim. (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.,* 156 Cal. 273, 277 [104 Pac. 312].)" Also, ·in the case of *Lanigan* v. *Neely*, 4 Cal. App. 772 [89 Pac. 441, 446], the· court said: "The rule in this state is so well settled by judicial decision that it has become elementary, that the appellate courts will not interfere in such cases

unless the amount awarded is so grossly excessive as to shock the moral sense and raise a reasonable presumption that the jury in the rendition of its verdict was actuated and influenced by passion or prejudice. (*Marshall* v. *Taylor*, 98 Cal. 55 [32 Pac. 867, 35 Am. St. Rep. 144]; *Wilson* v. *Fitch*, 41 Cal. 386; *Harris* v. *Zanone*, 93 Cal. 59 [28 Pac. 845]; *Howland* v. *Oakland C. Street Ry. Co.*, 110 Cal. 513 [42 Pac. 983].)'' It may be true that we might feel the award to be somewhat larger than we would have given had the matter been originally within our discretion. This, however, is not a test. Should we disapprove the verdict there would be open a number of courses. We might reduce the verdict and order judgment entered in the court below for the reduced amount. The question instantly presents itself as to what standard we would or could adopt in fixing the reduced amount. The only answer is that we would necessarily adopt the same standard adopted by the jury and the court below. Next, we might reverse the judgment and order a new trial on the issue of damages. Here again we meet the same question. What rule of law would we announce so that a future jury or court might be guided? All that we could do would be to caution against too great liberality and warn against the injection of passion or prejudice into the consideration. And so without a standard we might keep the case for years going back and forth between trial and appeal. The trial judge gave this question of damages earnest and able consideration. He was familiar with the case, the people involved and the facts presented. He wrote and filed a memorandum of opinion therein and his views are expressed as follows:

''The one point urged by defendant on his motion for a new trial is that the verdict of the jury is excessive.

''The only power given to the trial court to grant a new trial on this ground is that provided by section 657 of the Code of Civil Procedure, wherein the court is authorized to grant such a new trial when convinced that the verdict was rendered 'under the influence of passion or prejudice'.

''Counsel for defendant urged that in finding a measure to be used in determining whether or not a verdict is excessive, recourse may be had to decisions wherein verdicts of juries in cases of this character have been either sustained

or reversed, where the question as to whether or not the verdict was excessive has been considered.

"The cases cited by counsel for the defendant furnish little, if any, aid for the instant case. All authorities, however, do point out that the circumstances of each particular case necessarily determines the measure of damages. In other words, where the conduct of the arresting officer or the one who detains the aggrieved party is lacking in any reasonable justification, or is accompanied by conduct or circumstances that are particularly aggravating, or where the circumstances surrounding the arrest and detention are such as to particularly bring humiliation and mental distress, a larger award will be sustained than where the arrest or detention had some reasonable basis, or judgment, or where the circumstances were attended with little or no publicity or notoriety. The writer of the opinion in *Elser* v. *Southern Pac. Co.*, 7 Cal. App. 493 [94 Pac. 852], stresses the factors attending the arrest and detention as coming within that class of cases that justify a relatively small award in damages. On the other hand, in those cases where the arrest has been particularly provocative, or without any reasonable justification, or attended with considerable notoriety, much larger awards have been sustained.

"In the present case, I feel that there was sufficient evidence to warrant the jury in making the following findings:

"1st. That the defendant had no reasonable justification for arresting the plaintiff on the charge of insanity.

"2nd. That the defendant was influenced in his act of arrest by pique and disappointment in that the plaintiff refused to acquiesce in his, the defendant's beliefs that the child was the son of the plaintiff.

"3rd. That the publicity that attended the arrest and charge of insanity lodged against the plaintiff, in view of the circumstances of the case, and particularly the wide publicity given to the disappearance of Mrs. Collins' son, was not only such as to cause the plaintiff considerable mental disturbance and worry at the time of her arrest and incarceration, but the feeling of embarrassment and chagrin would likely continue for some time after her release.

"4th. That the plaintiff was in a highly nervous state as a result of the worry and strain from the loss of her son. A mother under such circumstances, when arrested and

charged with insanity, would experience a greater degree of pain and suffering, and perchance much more extended suffering, than would be the case if such conditions did not exist.

"Upon a motion for a new trial the court must necessarily assume that the jury considered all of those elements that are properly taken into consideration most favorable to the plaintiff's case. In the light of the above suggested findings, as well as others that might be pointed out under the evidence, I do not feel that the court can as a matter of law say that the verdict was rendered 'under the influence of passion and prejudice.'

"As I indicated at the time of the argument on motion for a new trial, when the verdict was announced my first impression was that it was an unusually large verdict. However, after a careful consideration of the matter I do not find myself possessed of that abiding conviction that the verdict is unjust, which is a condition I feel should exist before the trial court sets aside the jury's finding. The motion for a new trial is denied."

The judgment is modified by deducting the amount of $300 as special damages; thus modified the judgment is affirmed, respondent to recover costs.

Works, P. J., and Stephens, J., concurred.